411 So.2d 669 (1982)
Rita Schneider, Wife of/and Joseph SCHNEIDER
v.
PROCTOR AND GAMBLE MANUFACTURING CO., INC., Proctor and Gamble Distributing Co., Inc., and Commercial Union Assurance Companies.
No. 12382.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1982.
*670 Charles A. Boggs, Boggs, Loehn & Rodrigue, New Orleans, for defendants-appellees.
Steven M. Koenig, Heisler & Wysocki, New Orleans, for plaintiff-appellant.
Before GARRISON, WARD and AUGUSTINE, JJ.
AUGUSTINE, Judge.
Rita and Joseph Schneider sought recovery from Proctor and Gamble Manufacturing Co., Inc., for injuries caused by swallowing an open safety pin allegedly contained within a can of Pringles potato chips.
Upon trial of this matter before Commissioner Charles Rivet, judgment was rendered in favor of defendant Proctor and Gamble. Rita and Joseph Schneider bring this appeal, seeking reversal of the Commissioner's finding.
The Commissioner's determination was based upon a specific finding of fact, i.e., that the safety pin ingested by Rita Schneider did not come out of the can of Pringles.
We will not disturb pure findings of fact by a trial court unless the record reveals these findings to be "manifestly erroneous." Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Upon review of the record as a whole, we find no facts sufficiently favorable to the plaintiff as to warrant our conclusion that the trial court's judgment was "manifestly erroneous." Accordingly, we affirm.
The trial testimony and medical reports (notably x-rays) offered by plaintiff established beyond any doubt that Rita Schneider did in fact swallow an open safety pin, that she was admitted to Charity Hospital on August 24, 1976, and that the pin was surgically removed on August 25.
Beyond this, nearly every fact surrounding the true cause of plaintiff's injury was in dispute.
According to plaintiff's account, on Friday, August 20, 1976, she and her husband Joseph were seated at their kitchen table conversing with a friend, Doliska Ragsdale. Although the others were drinking coffee, the only thing consumed by plaintiff at that time was Pringles potato chips. The Schneiders testified that plaintiff had been eating the chips, slowly chewing them with her gums and the roof of her mouth (Mrs. Schneider had only three teeth), then ingesting the rest. After she had swallowed a number of chips in this manner, Mrs. Schneider began to choke. Her husband got up and patted her on the back, but to no avail. She tried to drink water, but could not. She stopped choking after a short while, but felt great pain in her throat and was unable to swallow anything. She remained at the table with her husband and Miss Ragsdale for a few minutes, but then left the table to lie down in her bed when the pain in her throat became unbearable.
Later that evening, she complained to Mr. Schneider that the pain had gotten worse. He looked at her throat and told her it appeared as though her tonsils were swollen. Plaintiff testified that later that night the pain became so great that she could not sleep.
Mrs. Schneider said that during the entire day of Friday, August 20, she had consumed nothing before eating the chips and that she was unable to eat or drink anything thereafter.
On Saturday, plaintiff sent her son to the drug store for a common green medication, but it had no effect on her condition. Again on Saturday, plaintiff spent a painful, sleepless night, having consumed neither food nor drink the entire day.
On Sunday, by plaintiff's account, her son drove her to Charity Hospital where she was examined by an intern who, finding only that her throat was infected, ordered a two-week prescription for penicillin. She was released that same day without having been admitted to the hospital.
*671 According to Mr. and Mrs. Schneider (and their son Joseph), plaintiff was finally admitted to Charity Hospital at noon on Monday, August 23. She was x-rayed at about 3:00 p. m., at which time it was discovered that an open safety pin was lodged in her throat. Efforts to remove the pin without surgery were unsuccessful, so she was operated upon later that night.
Plaintiff remained in the hospital for nine days after surgery. She had been scheduled for further quasi-surgical treatment, but having decided against undergoing any more operations, plaintiff "deserted" the hospital, i.e., left against medical advice.
Plaintiff insists that she neither ate nor drank anything between Friday morning and the late-night surgery of Monday, August 23.
Considering all the testimony on the foregoing points, Commissioner Rivet regarded the following facts as significant to his reasoning:
1. Plaintiff offered nothing to substantiate testimony that she had been treated by an intern at Charity Hospital on Sunday, August 22, 1976. Plaintiff further testified that she had been admitted to the hospital on Monday, August 23.
Hospital records were to the contrary, however. They revealed that Mrs. Schneider's admission was on Tuesday, August 24, and not the previous day as plaintiff insisted.
2. Plaintiff is an admitted diabetic.
3. Plaintiff was unable to chew the potato chips except by mashing them with her three teeth and gums.
4. Ms. Ragsdale did not testify or even appear at trial, despite having received personal service of the subpoena for trial.
5. The can of Pringles potato chips and its remains were not submitted in evidence.
From these conclusions of fact, Commissioner Rivet reasoned that:
1. If plaintiff had gone without food or drink as she had stated, it was for a period of five days, and not four. The Commissioner did not believe it probable that a diabetic such as Mrs. Schneider could have gone such a length of time without severe physiological reaction. Therefore, either the pin was swallowed some time after Friday, August 20, or plaintiff had consumed food and/or drink since that date. Both of these conclusions flatly contradict plaintiff's account.
2. It is improbable that a person might slowly chew an open safety pin without knowing it. It is even more unlikely that a person with no teeth could chew a pin and not feel it against the gums or roof of the mouth.
3. Ms. Ragsdale's failure to testify raises the presumption that her testimony would not have been favorable to the plaintiff. La.R.S. 15; 432.
4. Plaintiff's failure to produce the original can made it impossible for the trial court to determine that the safety pin probably found its way into the can from an extraneous source.
A trial judge is able to assess first-hand the many factors which bear on credibilitythe witness' demeanor, the conviction with which his account is expressed, and the intangibles which inform an experienced fact-finder and enable him to separate truth from fiction. An appellate record cannot hope to faithfully reproduce these factors. The trial judge is therefore accorded great deference in his measurement of credibility.
In the present case, however, it is not out of pure deference that we confirm the Commissioner's findings. Plaintiff's account is patently unbelievable and is replete with inconsistency, contradiction and implausibility. In light of the defendant's extensive testimony regarding the method of production at its plant and the attention given to insure that foreign objects do not enter the cans of potato chips, we must agree with the trial court that it is highly improbable for an open safety pin to have entered the can during any phase of production and *672 then be consumed by the plaintiff without her knowing it.
Finally, plaintiff assigns as error the refusal to admit into evidence the deposition of Doliska Ragsdale. This is a matter to which the trial court is assigned great discretion. Harrison v. State Department of Highways, 375 So.2d 169 (La.App. 2nd Cir. 1979). Given that Ms. Ragsdale's testimony would have merely repeated that which had already been stated in the testimony of plaintiff and her witness, there was no abuse of discretion in refusing to admit the deposition into evidence.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.