454 So.2d 895 (1984)
Nora Jean Hamilton CHAUDOIR, Plaintiff-Appellant,
v.
Richard E. CHAUDOIR, Defendant-Appellee.
No. 83-795.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1984.
*896 Trimble, Percy, Smith, Wilson, Foote & Walker, Elizabeth E. Foote, Alexandria, for plaintiff-appellant.
Downs & Downs, James Downs, Alexandria, for defendant-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
FORET, Judge.
Richard E. Chaudoir filed a rule seeking to obtain joint custody of his twelve-year-old daughter, Elizabeth Jean Chaudoir. A prior judgment had awarded sole custody to the mother, Nora Jean Hamilton Chaudoir. The mother also filed a rule to increase child support from $350.00 per month to $550.00 per month. Both rules were heard on March 7, 1983. The trial court granted the father's request for joint custody and adopted a plan for implementation of its custody order. The court denied the mother's request for an increase in child support.
The mother has appealed the decision of the trial court and raises several issues:
(1) Whether the trial court erred in altering the previous award of sole custody *897 to the mother so as to award joint custody to both parents.
(2) Whether the trial court erred in interpreting the joint custody law to mean shared residences as well as shared responsibilities.
(3) Whether the trial court erred in excluding from evidence the deposition of a child psychiatrist.
(4) Whether the trial court erred in reducing the amount of child support during those times during which the father would have physical custody of the child under its implementation plan.
(5) Whether the trial court erred in denying the mother's request for an increase in child support.

FACTS
The father, Richard E. Chaudoir, and the mother, Nora Jean Hamilton Chaudoir, were divorced in 1974, in Alexandria, Louisiana, their last matrimonial domicile. The mother received sole custody of their daughter, Elizabeth Jean Chaudoir. On November 30, 1981, the judgment was modified to specify the father's visitation privileges. The 1981 judgment provided for visitation privileges as follows:
"Every other weekend during the summer vacation from 5:00 o'clock p.m. Friday until 7:00 o'clock p.m. the Tuesday following;
During the months of school year from 5:00 o'clock p.m. Friday until 7:00 o'clock p.m. the Sunday following.
During the summer vacation months a period of four weeks.
From 5:00 o'clock p.m. on the day before until 5:00 o'clock p.m. on the following day of every other Thanksgiving, Christmas and Easter, beginning with Thanksgiving, 1981, Christmas, 1982 and Easter of 1982, providing that on the holidays during the year when Mr. Chaudoir does not have the foregoing visitation rights he will be permitted to have the child from 5:00 o'clock p.m. on the holiday until 5:00 o'clock p.m. on the following day."
Except for a short period of time when they lived in Shreveport, mother and child have resided in or near Baton Rouge since 1974. The mother has not remarried. She teaches school at Sacred Heart School in Baton Rouge, the same school in which the child was enrolled in the sixth grade at the time of the hearing.
The father has continued to reside in Alexandria, Louisiana, where he has a law practice. He has remarried and has a four-year-old child from his second marriage. During all of the time that the mother has had sole custody of Elizabeth, the father has exercised his visitation privileges and has maintained a close and loving relationship with his daughter.
Apparently the major source of friction between the father and the mother since their divorce has been the father's exercise of his visitation privileges. There have been disagreements over the interpretation of the father's visitation privileges, the father claiming that he is entitled to more visitation time, the mother, that he is entitled to less. The mother has also complained that the child's visitation with her father has interfered with activities such as dance and tennis, particularly in the summer when, under the 1981 judgment, the father was afforded four-day visitation every other weekend.

DID THE COURT ERR IN AWARDING JOINT CUSTODY?
LSA-C.C. Art. 157 governs change in custody after a divorce and provides that permanent custody shall be granted in accordance with LSA-C.C. Art. 146. Since the time of the hearing of this matter, Art. 146 has been amended. At the time of the hearing, Section C read:
"C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child unless;
"(1) The parents have agreed to an award of custody to one parent or so agree in open court at a hearing for the purpose of determining the custody of a minor child of the marriage; or

*898 "(2) The court finds that joint custody would not be in the best interest of the child.
"For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted."
Subsequently, Section C was amended. The 1983 amendment changed Section C to:
"C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
(1) However, the parents may agree to an award of custody to one parent.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.
(3) For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted."
We will apply Article 146 as amended. The general rule that a statute can only have prospective application applies only to substantive laws as distinguished from merely procedural or remedial laws which will be given retroactive application in the absence of language showing contrary intent. Fullilove v. U.S. Casualty of New York, 129 So.2d 816 (La.App. 1961), cert. denied June 22, 1961 (no citation found). Since we consider Art. 146 to be quasi-procedural and also consider the 1983 amendment to be remedial, we feel that Art. 146 as amended in 1983 should apply retrospectively to the instant case.
As can be seen, one of the major changes in Art. 146 as a result of the most recent amendment is that it no longer provides that the presumption that joint custody is in the best interest of the child does not apply if the court, in fact, finds that joint custody would not be in the best interest of the child. As a result, the presumption that joint custody is in the best interest of the child always existsit is no longer within the court's discretion to decide that the presumption is not applicable. The presumption, however, remains a rebuttable one and the other major change worked by the most recent amendment is the addition of a list of factors which must be considered in determining if the presumption has been rebutted.
We have closely examined the evidence in the record before us in light of these *899 factors and find that the decision of the trial court should stand.
We take the liberty of quoting from the trial judge's written reasons for judgment:
"... it is clear that Mr. Chaudoir is entitled to an award of joint custody. He has petitioned the Court for joint custody and has presented a plan. Moreover, the evidence is clear that Mr. Chaudoir is a caring father who has exercised all of his rights of visitation under the previous custody order, and he is making every effort to assure continuing and frequent contacts with his daughter. Mr. Chaudoir is a practicing attorney in Alexandria. He has remarried. His wife works as his secretary. They have a stable home where the child will be loved and cared for while in the custody of her father."
Additionally, we note that the child testified that the relationship between her and her father was a good one.
While it is true that the mother has had sole custody of the child for nine and one-half years and that it is desirable to maintain continuity, the implementation plan for joint custody adopted by the court results in the child spending no more than an additional month each year with the father. Additionally, the joint custody plan, by eliminating the four-day weekend visitations that the father was accorded under the old plan, will result in less disruption of the child's activities.
Having considered the evidence in light of the factors set forth in Art. 146, we conclude that the mother has not rebutted the presumption that joint custody is in the best interest of the child. Accordingly, we will affirm the judgment of the lower court awarding joint custody and establishing an implementation plan for the carrying out of that custody award.

DID THE TRIAL COURT ERR IN INTERPRETING ARTICLE 146 TO AUTHORIZE SHARED RESIDENCES?
In her brief, the mother contends that the legislature only intended for joint custody to mean shared responsibility and did not intend for it to involve the children spending part of their lives with one parent and part with the other. We have looked at Art. 146 and conclude that the legislature did intend for joint custody to include the sharing of physical custody of the child and as a result, the sharing of residences by the child.
The article provides, in part:
"... A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents." (Emphasis added.)
It also provides:
"D. For purposes of this Article, `joint custody' shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2). Joint custody shall also mean that the parents shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents." (Emphasis added.)
As should be clear from these excerpts, Article 146 unequivocably expresses the intention of the legislature that parents not only share responsibility, but they share physical custody of the child. The mother's contention that the legislature intended for joint custody to only involve shared responsibility and not shared physical custody is without merit.
SHOULD THE COURT HAVE ALLOWED THE INTRODUCTION OF THE DEPOSITION OF A CHILD PSYCHIATRIST?
At the hearing of this matter, the mother's attorney attempted to introduce a deposition *900 of a child psychiatrist who had seen the child in connection with problems related to the father's exercise of his visitation rights. The deposition was taken in connection with the previous rule filed in the same case. The father's attorney objected to the introduction of the deposition, claiming that it had been taken at a time when the courts were applying the maternal preference rule and before the amendment to Art. 146 establishing the preference for joint custody and that, therefore, its introduction into evidence would effectively destroy the father's right to intelligently cross-examine the psychiatrist in light of the new legislative enactments. The trial judge sustained the father's objection indicating that he thought that the testimony lacked probative value considering the legislature's determination as embodied in Art. 146 that joint custody was to be presumed to be in the best interest of the child. The court concluded that in the absence of some showing of unusual or special circumstances, the opinion of a doctor or child psychiatrist should not be allowed into evidence. Since no such showing of unusual or special circumstances had been made, the trial judge excluded the deposition from evidence.
In matters regarding the introduction into evidence of depositions, the trial court is vested with discretion. Schneider v. Proctor and Gamble Mfg. Co., 411 So.2d 669 (La.App. 4 Cir.1982); Harrison v. State, Dept. of Highways, 375 So.2d 169 (La.App. 2 Cir.1979). We think that the trial court did not abuse its discretion by excluding the deposition.
Furthermore, even if it had been error for the trial court to exclude the deposition, that error would have been harmless. We have considered the deposition which was included in the record as a proffer. Most of the psychiatrist's testimony related to a custody arrangement which was not at issue in the present case. That part of the psychiatrist's testimony which touched upon joint custody was, for the most part, in the nature of a general critique of joint custody. Any error in excluding the deposition would have been harmless.
DID THE TRIAL COURT ERR IN REDUCING CHILD SUPPORT TO CONFORM WITH ITS JOINT CUSTODY PLAN?
The trial court found the approximate cost of the child's expenses (food, recreation, etc.) of which the mother would be relieved when the child was with the father was $150.00 per month. The court reduced the mother's child support by this amount for June, July, and August of each year. The court explained this decision in its supplemental reasons for judgment:
"The father should be relieved of paying these expenses to the mother while the child is with him. In addition to the period of approximately two months that the father will have physical custody during the summer, he will have the child about seven days during Christmas, four days during Thanksgiving, and seven days during Easter, a total of about eighteen days. In addition, he will have the child more weekends than the mother, a total of over twelve days more. Adding the eighteen days during the holiday periods to the twelve days or more on weekends, makes a full month. This month added to the two summer months makes three months the father should pay less child support.
"For ease of computation and administration, the Court decided it would be better to reduce the child support payments during the three summer months, than to reduce them for each holiday and weekend separately. This is the reason for the Court's ruling."
A trial court is vested with considerable discretion in fixing the amount of child support, and its judgment in this matter will not be disturbed absent an abuse of discretion. Ducote v. Ducote, 339 So.2d 835 (La.1976); Bertrand v. Bertrand, 401 So.2d 552 (La.App. 3 Cir.1981); Arceneaux v. Arceneaux, 426 So.2d 745 (La.App. 3 Cir.1983); Johnson v. Johnson, 432 So.2d 1140 (La.App. 3 Cir.1983). We find that, in *901 reducing child support, the trial court acted within its much discretion.
DID THE TRIAL COURT ERR IN DENYING THE MOTHER'S REQUEST FOR AN INCREASE IN CHILD SUPPORT?
The jurisprudential rule governing requests for a change in an award of child support is that a change of circumstances must be proved to warrant a change in the prior award. Fakouri v. Perkins, 322 So.2d 401 (La.App. 3 Cir.1975). In the instant case, the trial court found that there had been no change in the circumstances that would warrant an increase in child support. A trial court's judgment in fixing child support will not be disturbed absent an abuse of discretion. Bertrand v. Bertrand, supra; Fakouri v. Perkins, supra; Ducote v. Ducote, supra.
After a careful reading of the record, we have concluded that the trial court did not err in denying the mother's request for an increase in child support. The mother attempted to show that the father's income had substantially increased since the previous judgment was rendered. The evidence, however, indicated that the father's income had not increased or had increased only slightly since the previous award. The mother also attempted to show the child's living expenses had increased. The mother, however, admitted that some of the increase was due to inflation. An increase in the cost of living due to inflation is not a basis for a change in a child support award. Fakouri v. Perkins, supra. The trial court did not abuse its discretion in determining that there had been no increase in the child's living expenses which would justify an increase in the child's living expenses which would justify an increase in the father's child support obligation. Accordingly, we affirm the trial court's denial of the mother's request for an increase in child support.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns written reasons.
DOMENGEAUX, Judge, dissenting.
Joint custody in Louisiana was prohibited by jurisprudential fiat since at least 1933. The feminist movement throughout the country has, in my opinion, backfired against mothers insofar as the time-honored "maternal preference rule" is concerned. The Louisiana Legislature, succumbing to certain idealisms, and presumably in an effort to eliminate all differences of sex,[1] abolished the maternal preference rule, and in an innovative adventure, dove head first into the realm of joint custody.[2] The traumatic change from jurisprudential prohibition of joint custody to statutorily rebuttable mandate of joint custody has caused much concern in legal, judicial, social and domestic circles. It would be my impression that the Legislature has not yet really settled down in this field in view of the furor that has been created. I surmise, that in time, after more realistic reflection, *902 further changes will come from Louisiana's legislative halls, and ultimately, joint custody will be allowed as an option or alternative, rather than as a rebuttable mandate. Only time will tell.
In this case I feel that the trial judge has erred in ordering joint custody. Without going into detail, the record indicates, I believe, that under the amended statute La.C.C. Art. 146(C)(2), joint custody is not in the best interest of 12 year old Elizabeth, who has been in her mother's sole custody since she was approximately two years old under favorable and commendable conditions.
Additionally, I feel that the trial judge erred in not allowing the psychiatrist's deposition into evidence. The doctor's testimony could be considered as part of "an investigation" as allowed under La.C.C. 146. Mrs. Chaudoir testified that the child's visitations with the father, and the controversy of the father's attitude had caused problems with the child, such that it became necessary that she be seen by a psychiatrist. The trial court should have allowed itself to be enlightened on that subject.
I respectfully dissent and would leave the sole custody of the child with the mother. Alternatively, I would at least remand the case for further delving into such psychiatric inquiry as may be necessary and which might effect joint custody of this child.
The nature of my dissent here precludes the necessity of commenting on the question of child support except to say that in the event sole custody were to remain in the mother, child support should be increased.
NOTES
[1] The popular and realistic cliche', "vive la difference" obviously does not have the same meaning that it previously enjoyed in recent times past.
[2] As is usually the case when our legislature ventures into avenues of change, we see a great importation of so-called experts from other states who come to our legislative committees supposedly to lend rhyme and reason to the venture. Such was the case here. The legislative history of the move to mandate joint custody shows that a Mr. James Cook from the State of California testified before the Louisiana House Civil Law and Procedure Committee as President of the "Joint Custody Association," based in Los Angeles. No where is his expertise mentioned,only his title. Not much was said about the "association" either except that it exists, and that it is a non-profit association of numerous individuals in multiple states for professionals interested in law and statutes perfecting joint custody. Presumably, Mr. Smith goes around the country trying to sell joint custody to State Legislatures. If so, he succeeded in Louisiana.