546 So.2d 617 (1989)
George A. FLOURNOY, Plaintiff-Appellee,
v.
Linda Mock FLOURNOY, Defendant-Appellant.
No. 88-367.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*618 Robert C. Lowe, New Orleans, for plaintiff/appellee.
Henry Lemoine, Pineville, for defendant/appellant.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
This is an action to modify a joint custody judgment. The mother, Linda Mock Flournoy, appeals the judgment of the trial court entered on November 16, 1987, which altered the joint custody decree originally entered on July 8, 1985. Appellant principally contends that the trial court erred in changing primary custody of the parties' minor child from the mother to equally divided physical custody on a six month alternating basis.

FACTS
George A. Flournoy (George) and Linda Mock Flournoy (Linda) divorced in Rapides Parish on June 18, 1985. Following an ancillary proceeding, the trial court adopted a plan for joint custody of the minor child, Leah, submitted by Linda. Under this plan, Linda was awarded primary physical custody of Leah, then three years of age, with George having physical custody of Leah on one night each week, on alternating weekends, for two weeks during the summer, and on designated alternating holidays. The trial court awarded Linda $500.00 per month child support.
On September 14, 1985, George married Nancy Ball. Nancy's two daughters from a previous marriage, Amy and Katie, ages 8 and 15, reside with them in Alexandria, Louisiana. George's youngest son from a previous marriage, Ben, age 10, also resides with them. Linda has not remarried and primarily resides with her parents who live in Alexandria.
On September 17, 1985, George filed a rule for contempt based on Linda's alleged interference with his right of visitation. Although the record is silent regarding the specifics of the incident complained of, a judgment was signed on October 23, 1985, ordering that Linda "be admonished not to interfere with the visitation rights of George A. Flournoy".
On October 29, 1985, six days later, George filed a motion for injunctive relief, contempt and modification of joint custody plan. This rule was based upon Linda's allegedly threatening and physically abusing George; engaging in violent and abusive conduct at his home while he was away and the children were under the care of a babysitter;[1] and, interfering with George's visitation rights by refusing to allow Nancy to pick up Leah on designated visitation days. On November 26, 1985, the trial court rendered judgment enjoining Linda from entering George's yard and/or home and modifying the joint custody plan so as to permit George to designate a responsible adult to pick up Leah for visitation. George voluntarily abandoned his demand for a contempt finding by the trial court.
On March 20, 1987, Linda filed a rule to show cause seeking judicial intervention in connection with issues concerning Leah's medical treatment, school choice, school expenses and visitation matters. On April 16, 1987, George filed a petition for habeas corpus and a rule for contempt after Linda allegedly denied George his Easter 1987 visitation with Leah. In retaliation, Linda *619 filed a rule for contempt against George based upon an incident which supposedly occurred on Labor Day, 1986. On May 18, 1987, George filed yet another rule seeking the primary physical custody of Leah, or, in the alternative, an equal snaring of physical custody. Linda responded by filing a rule seeking an award of sole custody. All rules were consolidated and heard in August 1987. On November 16, 1987, the trial court rendered judgment maintaining joint custody with equal sharing of physical custody of Leah on a six month alternating basis.[2] Linda appealed.
On December 17, 1987, George filed a motion for reduction of child support. The trial court rendered judgment reducing child support from $500.00 to $350.00 per month during the six month period that Leah would be in George's physical custody. Linda appealed this judgment as well.

CUSTODY
Appellant urges error in the trial court's finding that it is in Leah's best interest that her parents share her physical custody on a six month alternating basis.
George testified that Linda continually interfered with his right of visitation. This fact is corroborated by the numerous rules filed by George against Linda and the resulting judgments admonishing Linda. George acknowledged that he was aware of Leah's negative attitude toward him. He testified that he wished to spend more time with Leah in order to foster a better father-daughter relationship and to show Leah that there can be love and happiness between a husband and wife. George expressed concern for Leah because of Linda's apparent desire to gain sole control of her. Additionally, George expressed concern over Leah's negative attitude toward sex and marriage which he also attributed to Linda's influence. George testified that Leah got along well with his new wife, Nancy, and enjoyed playing with her stepbrother and stepsisters.
Linda basically corroborated George's testimony relative to their inability to communicate amicably and agree on even the most minor points (whether Leah should have her ears pierced, bangs cut, take flu shots, etc). Linda admitted that it was very difficult for her to send Leah away to George for over a week at a time. Linda acknowledged that she would have no objection to George's sharing in the decision making concerning Leah, "if they could ever come to agree".
Dr. Stuart Kutz, an expert in clinical psychology testifying on Linda's behalf, stated that he interviewed Leah on two occasions and Linda as well. He found Leah to be more anxious, apprehensive and insecure than the average child. He testified that she has trouble with separation anxiety and is prone to depression. Dr. Kutz stated that he had no grave clinical concerns for Leah's psychological status, but opined that she is having problems adjusting to the situation as well as developmental problems primarily due to the continual conflict between her parents. Dr. Kutz stated that Leah was overly dependent on her mother. He found her significantly disturbed and felt that her problems would worsen as she grew older unless the parental conflict ceases. Dr. Kutz recommended that Leah primarily reside with her mother but that George be allowed liberal visitation privileges in a tightly structured atmosphere which would minimize interaction and negotiation between George and Linda, while at the same time provide Leah with a large measure of security, predictability and stability. Dr. Kutz opined that alternating physical custody on a weekly basis would be counterproductive. However, under questioning by the trial court, Dr. Kutz agreed that alternating physical custody on a six month basis with liberal visitation by the non-custodial parent was workable but he suggested that a phase in period be utilized to implement this plan.
Dr. Milton Rhea, an expert psychologist who testified on behalf of George, examined Leah and George. He testified that Leah still had positive feelings for her father but was prevented from expressing *620 those feelings out of fear of losing Linda's love. Dr. Rhea stated that he felt George was being portrayed by Linda as the "bad guy". He opined that Leah was overly dependent on Linda to the point that a pathological dependency developed out of fear in which Linda capitalized on Leah's weaknesses. Dr. Rhea stated that under normal circumstances, he does not recommend equal split custody. However, in the instant situation, he felt that the balance had been tipped in the mother's favor and such a split in custody was necessary to counter balance the situation. Dr. Rhea expressed the opinion that Linda should not be given sole custody of Leah.
The trial court, although finding a demonstrated difficulty of communication between the parents, concluded that continued joint custody, as modified, was in the child's best interest. The trial judge's reasons for this conclusion are as follows:
"... The evidence was unanimous to the effect that the parties' five year old daughter was mildly depressive, insecure, anxious and overly dependent and that everything remaining the same, her condition would, without question, worsen. It was the Court's opinion that the conduct of the parents toward each other was the basis of their daughter's problems and that any custody decree should minimize contact between the parents. The Court further felt that the over-dependence which the child had for her mother and the unjustified alienation which the child was beginning to feel for her father and his family presented serious problems for her future development and would best be remedied by modification of the joint custody arrangement now in effect....
... the record demonstrates an overabundance of distrust between the parties. Ulterior motives are assigned to every act or judgment of the other party which is not concurred in. While both parties state that the other loves their daughter and has her best interest at heart they question the other's capacity and judgment to carry this out. Each thinks his or her judgment is superior when it comes to deciding what is best for their daughter. The Court finds this to be absolute folly. Both are intelligent, educated people. Until they overcome this mutual distrust of motive and judgment they will not be able to jointly parent their daughter. This fact, plus the need for Leah to develop a secure feeling in the homes of both of her parents is the basis of this split custody decree. While such an arrangement is unusual, split custody of some degree was the concensus of the psychologists who testified on this subject, and the Court agrees that under the circumstances of this particular case it is in the best interest of the minor child, as well as that of her parents."
It is well settled that the best interest of the child is the paramount consideration in custody matters. It is equally well settled that upon appellate review, the determination of the trial judge is entitled to great weight and will not be disturbed absent a clear showing of error. Our careful review of the record in this case reveals no clear error in the trial court's ultimate conclusion.

REDUCTION IN CHILD SUPPORT
Appellant next contends that the trial court erred when it overruled her exception of no cause of action and ultimately ordered a reduction in child support during the time Leah will be in George's physical custody.
In support of her exception of no cause of action, Linda urges that in his motion for reduction, George merely alleges that Linda's earnings have increased, her living expenses and cost of living have decreased, and George's living expenses have increased because Leah will be residing with him for six month periods. Linda argues that the case of Saxena v. Saxena, 518 So.2d 1098 (La.App. 5th Cir.1987), is controlling wherein our brethren of the Fifth Circuit concluded at page 1100:
"In our view the allegation here is nothing more than a conclusion that the facts to be shown at trial will prove that he had a reduction in income sufficient to *621 justify a reduction in the previously set alimony. To meet the legal requirements for fact pleadings the pleadings should state the ultimate facts upon which the conclusion is based, i.e., the amount of the husband's income at the time the alimony was previously set and the amount of his present income. Absent such an allegation which shows on the face of the pleadings the amount and extent of his diminution in income, the pleadings are not sufficient to state a cause of action."
In our view, the allegations made by plaintiff in his motion for reduction in child support are sufficient to state a cause of action and the trial court did not err in so holding. See La.C.C.P. art. 854; Haskins v. Clary, 346 So.2d 193 (La.1977).
We likewise find no clear error in the trial court's conclusion to reduce George's child support obligation while Leah is in his physical custody. In McCoy v. McCoy, 541 So.2d 1006 (La.App. 3rd Cir.1989), we stated:
"This issue is likewise determined on appeal by a review of the record for an abuse of the trial court's much discretion. There are several appellate decisions which hold that the trial court committed no abuse of discretion in rejecting a parent's demand for reduction or abatement of child support during extended periods of visitation with a parent. See Owens v. Owens, 489 So.2d 321 (La.App. 4th Cir.1986); Serrate v. Serrate, 472 So.2d 137 (La.App. 5th Cir.1985); and, Ritter v. Ritter, 491 So.2d 149 (La.App. 3rd Cir.1986). On the other hand, there are appellate decisions finding no abuse of discretion where the abatement of child support is granted. See Stine v. Stine, 479 So.2d 681 (La.App. 3rd Cir. 1985), and Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3rd Cir.1984). The issue of abatement of child support during extended periods of visitation is a matter within the trial court's discretion and is determined on a case by case basis."
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
Appellant is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] The police arrived at George's home on this occasion and Linda finally left the premises after being threatened with arrest.
[2] For complete judgment on the rules see the unpublished Appendix.