422 So.2d 213 (1982)
Clarence BROWN
v.
LYKES BROTHERS STEAMSHIP COMPANY, INC. and the Hartford Insurance Company.
No. 13275.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
*215 Joseph M. Bruno, Bruno & Bruno, New Orleans, for plaintiff-appellee.
William E. Wright, R.D. Allen, Terriberry, Carroll, Yancey & Farrell, New Orleans, for defendant-appellant.
William V. Renaudin, Jr., Kenny M. Charbonnet, New Orleans, for intervenorsappellees.
Before BARRY, LOBRANO and WILLIAMS, JJ.
BARRY, Judge.
This case involves a claim for damages which arose when plaintiff's foot was run over by a forklift owned and operated by Interocean Stevedoring Inc. (ISI). Named as defendants were Lykes Brothers Steamship Company, Inc. (Lykes), ISI, and Hartford Insurance Company as the liability insurer of both Lykes and ISI. Liberty Mutual Insurance Company, compensation carrier for plaintiff's employer, Neeb-Kearney & Co., Inc., intervened for reimbursement of benefits. It was stipulated Liberty Mutual paid $11,970.09 in medical and other benefits. Lykes, and its insurer, Hartford, were dismissed prior to trial. A 10-2 jury rendered a $70,000.00 verdict for plaintiff and against ISI and Hartford. No special interrogatories were submitted to the jury; only a general verdict form was used. A new trial was denied and defendants appeal alleging numerous specifications of error.

FACTS
On January 8, 1980, plaintiff, a 13 year employee of Neeb-Kearney and a 30 year laborer on the waterfront, was working in a warehouse as a stenciler while co-workers were palletizing cargo in a warehouse at the Nashville Avenue wharf. A truck had delivered crates of salid oil, already palletized, and the Neeb-Kearney forklift removed the pallets from the trailer and placed them in two lines parallel to the railroad tracks and the river. There were approximately 16 pallets each holding 64 crates of salad oil. After the forklift completed the unloading, an ISI forklift was to position empty ISI pallets and the crew was to transfer the cargo from the Neeb-Kearney pallets to the ISI pallets. The ISI forklift operator had completed placing empty pallets on the river side of the warehouse and was in the process of or had just finished positioning the empty pallets on the railroad track side when the accident happened. Plaintiff was to the left of the forklift on the railroad track side and was attempting to pass behind the forklift to join the rest of the crew on the right river side in order to stencil the salad oil cartons. Mr. Picou, operator of the ISI forklift, had just put down a pallet and stopped. At this point plaintiff crossed behind the forklift and Picou backed up the forklift, causing its left side to roll over plaintiff's right foot.

NEGLIGENCE
Appellants submit the evidence does not establish any negligence by the forklift operator. They claim it is common knowledge of waterfront employees to stay clear of these machines, and plaintiff's presence behind the forklift was unexpected, unforeseeable, and not a risk a reasonably prudent man in Picou's situation would have anticipated. They argue the area where the accident occurred was used exclusively for storing and handling cargo and all workers *216 except plaintiff were away from the rear of the machine.
Plaintiff responds the record furnishes a reasonable factual basis to conclude defendant's employee was negligent. We agree. Picou candidly admitted he did not look behind him before plaintiff was struck and he was not aware of plaintiff's presence until after the accident. The evidence shows that there were several pedestrain workers in the same vicinity and the nature of the operations (the forklift positions empty pallets, the crew repalletizes boxes and marks them for identification) required a close proximity between the lift and the workers in the warehouse.
Actionable negligence results from the creation of an unreasonable risk of injury to others. While the customary defensive practice of waterfront workers to avoid a forklift is relevant in determining negligence, we feel it is not conclusive. To ascertain if the risk is unreasonable we must consider the likelihood that injury may occur and the seriousness of the injury. The chance of injury here was relatively slight because the forklift operator had no blind spots and should ordinarily have observed those in his path, but the seriousness of harm that could result from one of these several ton machines is great. Guilbeau v. Liberty Mutual Insurance Co., 338 So.2d 600 (La.1976). There was testimony that the lift moved too fast for someone to get out of its path. Appellant's employee's negligence was his creating an unreasonable risk of harm in backing and turning the forklift without looking for anyone who might be in his path. He had a duty to look before backing and his failure to do so was a breach of that duty.

CONTRIBUTORY NEGLIGENCE
Appellants also maintain in light of plaintiff's work experience he knew of the danger and failed to exercise care commensurate with the foreseeable risk. Accordingly, they assert the jury was manifestly erroneous in failing to find plaintiff contributorily negligent. We find no basis for this argument in fact or in law. Plaintiff had completely passed the rear of the forklift, moving from left to right, when defendant's employee made an unexpected and quick left turn, catching plaintiff on his right side, as he walked farther away from the lift.
Assuming, arguendo, that plaintiff was inattentive, his contributory negligence would be of no moment.
Under Louisiana jurisprudence, an operator of a vehicle or heavy equipment who observes, or who should by the exercise of reasonable care have observed, a pedestrian in a position of peril of which the latter is apparently unaware, is responsible for injuries caused when his vehicle strikes the pedestrian in his path, despite any contributory negligence on the part of the latter; providing that, after the duty to make such observation arose, the operator could reasonably have avoided the accident.
Guilbeau, supra, and cases cited therein, at p. 604.
An ordinarily prudent forklift operator would have discovered the obviously unaware pedestrian worker by only the slightest observation in the appropriate direction. The testimony reveals when the plaintiff passed the rear of the forklift it was stopped. The operator should have looked at this moment and could have easily discovered the worker and shouted to alert him to his intended movement and thus have avoided the accident.
The jury's finding of negligence on the part of defendant's employee and its failure to bar plaintiff's recovery due to possible contributory negligence is not manifestly erroneous and will not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), Canter v. Koehring Co., 283 So.2d 716 (La.1973).

CONTINUANCE
Appellants contend the trial court erred in failing to grant the mandatory continuance provided in LSA-C.C.P. Art. 1602 as "a material witness has absented himself without the contrivance of the party applying for the continuance."
*217 Appellants' only witness, Dr. Eugene J. Dabezies, received a subpoena on May 20, 1981 to appear for trial at 9:00 a.m. the following day, May 21, 1981. On May 21, 1981, court was adjourned at 3:30 p.m. Appellants submitted an affidavit by Dr. Dabezies with its motion for a new trial which stated at 3:35 p.m. on the 21st the Doctor was on his way to court when he received word he would not be needed that day. The trial was continued to 9:30 a.m. Tuesday, May 26, 1981 for the sole purpose of hearing Dr. Dabezies' testimony. (Appellants maintain this was not done at their request but on the trial court's own motion. The record sheds no light on this.) Dr. Dabezies' affidavit states he was informed by defense counsel on May 22 of the May 26th date at which time he informed them he already had surgery scheduled which could not be cancelled. He rearranged his schedule intending to be in court as close to 9:30 as possible. On the 26th the doctor began surgery at 7:00 a.m. and was still there at 9:00 a.m. His staff was advised to call the court to inform the attorneys he would be there as soon as possible. At approximately 10:15 or 10:30 he advised one of the attorneys by telephone from the operating room that he could be in court in 15 minutes. At 10:30 the court determined since the trial had been continued once already and had been delayed that morning for an hour that the case would proceed. Appellants presented appellee with two medical reports from Dr. Dabezies: July 15, 1980 (more than 6 months after the accident) and May 18, 1981 (3 days prior to trial). After the case was called and the doctor was still not present, appellee offered to stipulate to both medical reports, but appellants refused. Hence, the reports were not submitted to the jury and are not in the record. Also, the Trial Judge offered to have the sheriff pick up the doctor, an offer understandably declined. At 10:30 the trial resumed without the doctor and the case was submitted with closing arguments. At approximately 10:45, during appellee's close, Dr. Dabezies arrived in court.
Appellants contend the refusal to grant the mandatory continuance under LSA-C. C.P. Art. 1602 constituted reversible error as Dr. Dabezies' testimony was material or essential to their defense and his absence was not contrived. It is argued Dr. Dabezies would have been the only orthopedist to testify since plaintiff's expert was "qualified only as an expert in surgery." Because the alleged disability involves a foot injury, they argue an orthopedist's testimony is indispensable to comprehending the injury. In their supplemental brief appellants state: "Plaintiff's offer to stipulate to the medical reports in no way renders the testimony unnecessary or any less material, particularly since the Doctor was expected to testify concerning matters not set forth in the reports, i.e., that the exaggerated gait exhibited to the jury by plaintiff was not related to the alleged accident and that plaintiff's use of a cane was wholly nonfunctional."
When the conditions of LSA-C.C.P. Art. 1602 are met the granting of a continuance is mandatory. McCaleb v. Department of Public Safety, 309 So.2d 748 (La. App. 4th Cir.1975). The article provides that the witness must have absented himself contrary to the wishes of the party seeking the continuance and also it must be shown that the testimony to be elicited from that witness is material or essential to that party's presentation of his case. Gallin v. Travelers Insurance Co., 323 So.2d 908 (La.App. 4th Cir.1975), writ denied, 329 So.2d 452 (La.1976). Apparently the policy behind this article requiring a mandatory continuance is to insure that a party is not deprived of his day in court or his right to properly present his defense when not due to his own fault or delinquency.
The record does not indicate and appellants have made no showing that Dr. Dabezies' testimony would lead to material evidence. As we have noted, plaintiff offered to stipulate to Dr. Dabezies' two medical reports. Appellant merely contends in his brief that testimony from an orthopedist was essential and that the reports would be supplemented with testimony from Dr. Dabezies relating to plaintiff's *218 "exaggerated gait" and "nonfunctional" use of the cane.
Plaintiff's doctor, Dr. Axelrod, was qualified as an expert in general surgery and was Board certified by the American Board of Surgeons. His testimony was that the 10% disability was not due to damage to the bones but was attributable exclusively to the painful scar on plaintiff's right foot. The fracture had completely healed and did not seriously affect the plaintiff's future condition. Under these circumstances we see no reason why an orthopedist's testimony was essential to an understanding of the case. Surely, Dr. Dabezies' opinion as to the extent of bone damage caused by the injury and observed by him on July 15, 1980 and May 19, 1981 was contained in the medical reports. Regarding additional testimony as to plaintiff's gait, we note every witness testified that plaintiff walked with a limp or "crippled" gait prior to the accident.
Under the circumstances of this case we find appellants' basis for a continuance does not fall within the purview of LSA-C.C.P. Art. 1602. Dr. Dabezies was not served with a subpoena until the day before trial.[1] We note appellants' refusal to stipulate to the doctor's medical reports; however, that did not preclude submitting reports subject to a continuing objection to the denial of the continuance. Dr. Dabezies was not the treating physician and had minimal involvement with the patient (examinations 6 months post accident and three days before trial, nearly a year and a half post accident). The record reflects that the trial court offered to have the sheriff bring the doctor to court. Considering all of these factors we do not find the trial court's failure to grant a continuance prevented defendants from properly presenting a defense. On the contrary, the Trial Judge acted within his sound discretion and in the interest of efficient administration of justice.

CROSS-EXAMINATION OF DEFENDANT'S EMPLOYEE
Appellants complain the trial court erred in permitting defendant's employee to be called under cross-examination pursuant to LSA-C.C.P. Art. 1634. They argue the article provides that the person called be a party or its representative and does not apply to all employees. They urge "representative" means an employee in a supervisory capacity or agent of the party. The party called, Mr. Picou, operator of the forklift, was an employee. Appellants argue this prejudiced their case by preventing defendants from presenting their case in their own fashion.
LSA-C.C.P. Art. 1634 provides in part:
"Representative" as used in the paragraph above and in Article 1428(2) means an officer, agent or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.
Mr. Picou, the operator of the forklift was clearly an "employee having... knowledge of the matter in controversy..." and obviously within the purview of this article. In addition, as appellee points out, defendants waived their objection to plaintiff's calling this witness as no timely objection was made. Further, appellants were not prejudiced having had the opportunity to recall Mr. Picou as their own witness but surprisingly chose not to.

EVIDENTIARY RULINGS OF THE TRIAL JUDGE
Appellants contend the Trial Judge made two prejudicial and erroneous evidentiary rulings requiring the judgment be reversed. The first concerned appellants' question to Cecil Jones, appellee's witness, regarding whether or not appellee was in a position to see the lift machine moving toward *219 him. Appellants, with this line of questioning, were attempting to establish appellee's contributory negligence. Appellants other complaint revolves around Arthur Simms', appellee's witness, response to the question: "Is there anything Clarence could have done to avoid being hit by the forklift? Mr. Simms responded "No way" before defendant raised his objection. The court overruled the objection, stating "Anyway, he already answered it." The question and answer were then both repeated. Appellants object this was an opinion by a fact witness that went to the ultimate issue of the case and had the effect of removing from the jury's consideration any evidence of plaintiff's negligence. As we said before, in this situation, plaintiff's negligence was of no moment. Notwithstanding the correctness of the ruling, we find no prejudice resulted therefrom.

SPECIAL VERDICT FORMS AND INTERROGATORIES TO THE JURY
Appellants contend the trial court's refusal to submit interrogatories to the jury was arbitrary and prejudicial as it precluded defendants' knowing the basis of the jury's decision and prevented the jury's response to allegations of plaintiff's negligence. LSA-C.C.P. Arts. 1811 and 1812 are clearly within the sound discretion of the Trial Judge. We find no abuse of discretion in this ruling.

EXCESSIVENESS OF THE AWARD
The jury rendered a verdict for the plaintiff in the sum of $70,000.00 which included plaintiff's claim for pain and suffering, past and future lost wages, plus stipulated medicals. Appellants claim there is no basis to support such an award because it is clearly excessive and should be overturned. We disagree.
Appellants argue the injury was minimal and required no specific treatment, the laceration was healed by January 28, 1980 and the fracture by August 27, 1980. They also assert most of appellee's complaints predate and were unrelated to the accident.
Appellant does not favor us with a suggested award but cites Reggans v. Aetna Casualty & Surety Co., 308 So.2d 898 (La. App. 2d Cir.1974), writs denied, 309 So.2d 675, 310 So.2d 642, 646 (La.1975) wherein the Second Circuit reduced an award from $44,000 to $16,000. We note this case was decided in 1974, prior to the Supreme Court's rendition of Reck v. Stevens, 373 So.2d 498 (La.1979) which clarified the appellate standard of review of damage awards.
Plaintiff's physician, Dr. Axelrod testified:
He had a contusion and abrasion of the right foot and ankle and he also had two lacerations along the inner aspect on the sole of the right foot. In addition he had a non-displaced fracture at the base of the fourth metatarsal bone. And treatment involved cleaning the lacerations and suturing after local anesthetic.
Q. Was anything in particular done with reference to the fracture?
A. No, sir. It was a type of fracture that required no specific treatment, but we did recommend that he did not bear any weight on the foot. And crutches were also prescribed.
Dr. Axelrod later explained that he did not mean the fracture wasn't severe enough for a cast but that it simply wasn't treatable with a cast. In a non-displaced fracture, the bones are broken but the two pieces of bone still remain in their normal anatomical position; hence the reason for no cast.
Appellee was given medication for pain and a tetanus shot and was seen eight times in January. On January 28, 1980, Dr. Axelrod noted the lacerations were healed and the abrasions almost healed. Plaintiff was seen eight times in February and on February 11, 1980 he began physical therapy three times a week. He was seen six times in March and numerous times in April, May, June and July. Appellee complained of pain and swelling the entire time and continued seeing Dr. Axelrod until August 27, 1980. In February, 1980 Dr. Axelrod noted *220 other problems, i.e., elevated blood pressure and a heart murmur, and referred appellee to another doctor to treat these unrelated problems. Dr. Axelrod felt appellee could never return to his former occupation, would continue to suffer pain and swelling in the future, and diagnosed a 10% permanent partial disability due to a painful scar on the right foot. Appellee testified that he still felt pain in the injured foot and had to keep it elevated and special shoes were prescribed which he still wears daily.
Appellants also argue there is no basis in the record to award past and future lost wages. The only evidence of plaintiff's earnings was his own testimony. Additionally, plaintiff's economist's estimates are unfounded because they are based on the assumption that the 65 year old plaintiff would retire two years from the trial when in fact he testified he would retire two years from the accident.
Appellee's uncontradicted testimony as to his lost wages is sufficient if credible and reasonably establishes his claim. Income tax returns and further corroborating evidence are unnecessary, though preferred. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). Appellee testified at the time of the accident he was earning $5.62 per hour and he always worked 40 hours a week and about twice a month put in overtime. The economist's calculations were based on 40 hours per week at $5.62 per hour. The plaintiff clearly stated he planned to retire two years "from the time right now ...."
Q. From right now?
A. Uh-huh (indicating affirmative reply.)
Q. And not from a year ago?
A. No.
The medicals were stipulated at $1,822.00. Appellee's economist testified the past lost wages were $13,500 and future lost wages for two years from trial would be $18,792.00 or a total of $32,292.00 in past and future lost wages. The balance of the $70,000, or $35,886 was apparently awarded for pain and suffering. Under the standard enumerated in Reck v. Stevens, supra, we are satisfied this award for this particular claimant's injuries is reasonable and clearly supported by the record.
The judgement of the trial court is affirmed with appellant to pay all costs.
AFFIRMED.
NOTES
[1] His affidavit stated appellants' counsel were warned on May 22 of the Doctor's scheduled surgery on May 26; however, the court was not advised of his inability to be present until May 26.