433 So.2d 392 (1983)
Albertha Norris, wife of/and George NORRIS
v.
The CITY OF NEW ORLEANS.
Nos. CA-0411 to CA-0414.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1983.
Marilyn A. Boothe, New Orleans, for plaintiffs-appellants.
Salvador Anzelmo, City Atty., Douglas P. Wilson, Chief Deputy City Atty., Michelle M. Ostrander, Asst. City Atty., New Orleans, for defendant-appellee.
Before GULOTTA, SCHOTT and CIACCIO, JJ.
GULOTTA, Judge.
In this intersectional accident case, the issue before us is whether the City of New Orleans is negligent under LSA-C.C. Art. 2315 or strictly liable under LSA-C.C. Art. 2317 for malfunctioning traffic signals at the accident scene, where each driver claimed the benefit of a green light.
The collision occurred on October 22, 1979, at approximately 8:45 a.m., at the intersection of North Galvez and Caffin Avenues in New Orleans. Albertha Norris was traveling in a "downtown" direction on North Galvez toward Chalmette, and the second driver, Rose Simmons, was traveling riverbound on Caffin and approaching the intersection from Norris' left. The left front of the Norris vehicle collided with the *393 right front door of the Simmons vehicle in the middle of the intersection. Both vehicles had been traveling approximately 20 mph, and neither driver saw the other until impact.
Mrs. Norris' undisputed testimony was that two green lights on the downtown side of Caffin favored her as she approached the intersection on North Galvez. Two different light standards on the riverside of North Galvez controlled the Simmons vehicle riverbound on Caffin. One of these standards, on the neutral ground of Caffin, was broken and lying down before the accident. The second light standard was on the "uptown", riverside corner of Caffin and North Galvez.[1] Simmons claimed it was green in her direction as she approached the intersection.
Norris' suit for damages naming the City of New Orleans as sole defendant was consolidated with other actions filed against her and against the City by Simmons' guest passengers and by the owner of the Simmons vehicle. After a trial on the merits, the trial judge dismissed Norris' action against the City, but cast her in judgment to Simmons' injured guest passengers. It is from these judgments that Norris alone has appealed.[2]
In written reasons for judgment dismissing Norris' suit against the City, the trial judge concluded that plaintiffs had failed to carry the burden of proving the City was "in any way negligent in either the manner in which the traffic signals had been erected and placed, or in connection with the maintenance thereof." The trial judge further concluded that, although Mrs. Norris "had every right to proceed" on the green light in her favor, she had a duty "to move with more care, if in fact the lights were malfunctioning" and this "may have made her contributorily negligent." He likewise concluded that Mrs. Simmons was negligent either in crossing the intersection on a red light or, if the light was malfunctioning, in failing even to look for the Norris vehicle as she crossed the intersection.
Norris contends the malfunctioning signal lights were the direct and proximate cause of the accident and that the City was either negligent in maintaining the lights or strictly liable under LSA-C.C. Art. 2317 for damage caused by lights under its control. She further argues that the trial court erred in finding she "may have been" contributorily negligent.

NEGLIGENCE
According to Norris, the evidence clearly establishes that both motorists were favored with a green light. She contends that the City had both actual and constructive knowledge of the malfunctioning signal lights and was negligent in failing to remedy the defect until after the accident.
Although there were no eyewitnesses to the actual impact, Frederick Edwards testified that "the red light on the neutral ground of Caffin and Galvez was down on the river side" and that the other light on the corner of Galvez and Caffin was twisted "catty-corner" shortly before the accident. Although he did not know which way it was turned, it was not "straight". Edwards stated that he had complained once to a policeman about the downed light on the median, and testified that the other light had been tampered with on other days prior to the collision. The testimony of another witness, Gus Wallace, largely corroborated that of Edwards.
George Norris likewise observed that one light standard was lying down after the accident and the second was "twisted around". According to Norris, a policeman turned this light to its correct position shortly after the accident.
*394 A resident of the neighborhood, Wilma Davis, testified that on the night before the accident she had reported the downed neutral ground light to the police department. She had not noticed that the other light facing riverbound traffic on Caffin was twisted until after the accident and could not say in what direction it was facing. Significantly, this witness testified that a driver or anyone "paying attention to the lights" would know "it wasn't the way it was supposed to be." She acknowledged that from a distance one could tell that the light was twisted and not functioning as it should.
Elmer Darwin, the traffic engineer for the City, testified that the last repair visit to the intersection was on May 20, 1978, and that he had no records of any repairs of traffic signals at this location for a year before the accident. His review of the City's "complaint log" disclosed two complaints about the intersection on May 1 and June 15, several months before the October 22, 1979 accident. The city electrician's work reports for the weekend before the Monday morning accident reflected no calls about the intersection. The City's complaint log only mentioned the intersection on October 22 at 9:25 a.m., shortly after the accident. Darwin testified that the intersection is properly designed.
Although the City has a duty to maintain its traffic signals, it is not responsible for every accident resulting from a light malfunction. To hold the City liable in negligence, there must be a showing of its notice (constructive or actual) that a danger exists. See U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La. 1976); Tappel v. Vidros, 407 So.2d 789 (La.App. 4th Cir.1981).
The evidence considered, we cannot say that the City had prior notice, either actual or constructive, of these malfunctioning traffic lights until after the collision. Despite testimony of complaints to the police department before the accident, those complaints are not reflected in the City's records. The trial judge apparently placed more weight on the City's testimony and less on plaintiff's witnesses. Under these circumstances, we find no error in the judge's conclusion, based on credibility, that the City was not in any way negligent in the placement or maintenance of the signals.
Furthermore, even assuming the City had prior notice of the downed light on the Caffin median, there is no showing that the City's failure to repair this light caused the accident. Although the testimony was undisputed that Norris was favored with green lights, the record supports the trial judge's conclusion that Simmons, despite her testimony, did not have a green light. The evidence clearly shows that one light in Simmons' direction was down and the other, if twisted, was such that Simmons should have recognized the malfunction and proceeded more cautiously. Simmons' inattention to the obvious defects in the lights controlling her and her failure to see the approaching Norris vehicle constituted the sole proximate cause of the accident.

STRICT LIABILITY
The negligence of Simmons in failing to exercise care, despite the malfunctioning traffic signals, likewise exonerates the City from strict liability under LSA-C.C. Art. 2317. Although this codal provision imposes liability without fault, the municipality is not liable where the harm was caused by the fault of the victim or of a third person. See Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980), American Road Ins. Co. v. Montgomery, 354 So.2d 656 (La.App. 1st Cir.1977), writ denied 356 So.2d 430, 434, 435 (La.1978). In our case, we cannot conclude the City is liable under strict liability where a driver's fault, and not the malfunctioning signal, proximately caused the accident.
In so holding, we distinguish Garrison v. State, Through Dept. of Highways, 401 So.2d 528 (La.App. 2nd Cir.1981). In Garrison, the State was strictly liable under LSA-C.C. Art. 2317 for a malfunctioning traffic light where both motorists were faced with green lights as they entered the *395 intersection and had no warning of the malfunction. The state did not prove that either driver was negligent by failing to maintain a general observation of the controlled intersection. Unlike the motorists in Garrison, Simmons, in our case, was not favored with a green light and should have observed the obviously defective signals.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] This light standard has two sets of red, amber and green signals. One set of signals faces riverbound traffic on Caffin, and the other faces traffic on North Galvez moving in an "uptown" direction towards New Orleans. When the set facing riverbound traffic on Caffin is red, the set facing New Orleans-bound traffic on North Galvez is green, and vice-versa.
[2] The thrust of Norris' appeal is the question of the City's liability. Therefore, we have confined our consideration to that question only.