477 So.2d 1202 (1985)
Haste CARR
v.
CITY OF COVINGTON, et al.
No. 84 CA 0809.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Rehearing Denied November 8, 1985.
*1203 John W. Anthony, Bogalusa, for plaintiffs-second appellants.
William Bologna, New Orleans, for defendants-first appellants, City of Covington and Am. Ins. Co.,
Paul Grego, New Orleans, for defendants-appellees, Parish of St. Tammany and Aetna Ins. Co.
Richard T. Simmons, Metairie, for defendant-appellee, La. Gas Service Co.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
The City of Covington (City) and its insurer, American Druggists Insurance Company, appeal the trial court judgment which held the City strictly liable for the injuries sustained by Haste Carr while crossing Courthouse Alley. Mr. Carr also appeals the trial court's holding that Louisiana Gas Service Company was not liable. We reverse.
Haste Carr[1] was injured when he stepped into a pothole as he crossed Courthouse Alley in Covington, Louisiana. The pothole was described as being about twelve inches in diameter and from one inch to two inches deep. Courthouse Alley runs north and south along the eastern side of the St. Tammany Parish courthouse between Boston and Gibson streets. The street is used both as a thoroughfare for motor vehicles and by pedestrians who have business in and around the courthouse.
On December 1, 1980, Mr. Carr, who was a St. Tammany Parish employee, was walking from his office near the courthouse to his car when the accident occurred. Mr. Carr crossed the street several feet from the intersection out of the crosswalk. While crossing the street, he began to *1204 watch two couples in the vicinity,[2] stepped into a pothole, fell and seriously injured his ankle.
The pothole was directly above a valve on a natural gas line owned by Louisiana Gas Service Company. The valve which was enclosed in a valve box was installed in 1935. When the box was installed, the top was level with the concrete street. Since the street had been overlayed with asphalt several years before the accident, the box was several inches below the surface of the roadway. Louisiana Gas is responsible for maintaining the gas lines and making repairs related to the operation of the gas lines.
Mr. Carr filed suit against the City and its insurer on November 5, 1981. On February 16, 1982, the City filed a third party demand against the Parish of St. Tammany claiming that Courthouse Alley had been leased to the Parish for twenty-five years beginning on May 15, 1957. Under the lease, the City claimed it was not obligated to make repairs and that the Parish had agreed to indemnify the City in the event of an injury to a third party. On September 24, 1982, the City filed a third party demand against Louisiana Gas alleging that Louisiana Gas had responsibility for the pothole since it was located directly over a gas company valve. Louisiana Gas pled prescription which the trial court referred to the merits of the case. Mr. Carr amended his petition to include a demand for damages against Louisiana Gas and the Parish cross-claimed for indemnity and contribution.
After trial on the merits, the trial court found the City strictly liable for Mr. Carr's injuries. Mr. Carr was awarded $30,000 in general damages, $4,297.74 for past medical costs and $759.28 for court costs. The trial court granted judgment for the Parish as intervenor for workmen's compensation in the amount of $6,125.00 and $4,297.74 for payment of Mr. Carr's medical bills. These amounts were to be deducted from the main award. The trial court found that the lease did not apply to the area of the accident nor the injury sustained and dismissed with prejudice the claims against the Parish. Finally, the trial court dismissed with prejudice all claims against Louisiana Gas finding it had no control or responsibility for maintenance of Courthouse Alley. The City appeals from the judgment rendered against it, and Mr. Carr appeals the dismissal of Louisiana Gas.
The primary issue in this case is whether the pothole created an unreasonable risk of harm so as to constitute a defective thing under La.C.C. art. 2317. We find that it did not create an unreasonable risk of harm under the facts of this case.
The City has a duty to maintain its streets and sidewalks in a safe condition for use by the public. (Citations omitted) Reinhard v. City of New Orleans, 371 So.2d 286, 288 (La.App. 4th Cir.), writ denied, 374 So.2d 656 (La.1979). For the City to be liable the unsound condition must be dangerous or calculated to cause injury. See White v. City of Alexanderia, 216 La. 308, 43 So.2d 618, 620 (1949). A pedestrian has a duty to see that which should have been seen. He is not required to look for hidden dangers, but he is bound to observe his course to see if his pathway is clear. A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonable prudent person exercising ordinary care under the circumstances. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1067 (La.App. 1st Cir.), writ denied, 433 So.2d 1056, 1057 (La.1983).
The record reflects that the pothole was readily visible. When asked if the pothole was in plain view, Mr. Carr, in his deposition, stated that it was. Thus, had Mr. Carr been exercising ordinary care when crossing the street, he could have easily *1205 avoided the pothole and prevented his injuries.
The trial court found that the City owned and controlled Courthouse Alley. It also found that "the risk of harm created by the pothole of its depth, character and nature, in the middle of the alley where pedestrians traversed daily was not justified in any way by any utility to the City. Therefore, the court holds that the pothole over which the City exercised sole authority was a defect which caused plaintiff's injuries."
Although the trial court utilized the proper criteria for determining strict liability, these criteria were misapplied. The trial court looked to the utility of the pothole rather than the utility of the street in making its findings of fact. This is clearly wrong. Obviously, a pothole will never have any utility whereas a street usually does have utility to a municipality.
There is unrebutted testimony in the record that the City maintenance crews repaired all of the potholes in Courthouse Alley three or four times a year. There was also testimony that anytime a pothole was discovered by or brought to the attention of the maintenance crew, it was repaired. As this court noted in Williams v. Parish of East Baton Rouge, 417 So.2d 483, 484 (La.App. 1st Cir.), writ denied, 420 So.2d 980 (La.1982), "even though a pothole may be corrected early in the day, rain and traffic can cause a pothole to redevelop later the same day." The trial court noted that the gutters and sidewalks along the street have been rough terrain long enough "to put an ordinarily prudent man on notice that he would have to watch his step." Mr. Carr had been in the area of the accident daily for three months preceeding the accident. He testified that he was familiar with the street and sidewalk in that area.
We find that the pothole did not present an unreasonable risk of injury to Mr. Carr. Therefore it was not a defect. Furthermore, even if the pothole did constitute a defect, Mr. Carr's conduct was sufficiently below the standard of care which the law requires of pedestrians and so qualifies as victim fault.
In view of our above holding, we need not consider any of the other issues raised by the parties on appeal.
For the foregoing reasons the judgment of the trial court is reversed. Costs are to be borne by Mr. Carr.
REVERSED.
NOTES
[1] Haste Carr died on August 31, 1983, in an automobile accident. His wife and three major children were substituted as party plaintiffs in this case.
[2] Mr. Carr's testimony reads as follows: "Well, as I was leaving, I left the office and I walked in front of the trailers and started across Courthouse Alley. I looked to see if traffic was coming. I saw two young couples, and at the time I saw the two young couples, I stepped in the hole, and my glasses went one way and my hat went another."