492 So.2d 1247 (1986)
Mildred CLAIRMONT
v.
CITY OF NEW ORLEANS and Leonard Krower & Son, Inc.
No. CA-4949.
Court of Appeal of Louisiana, Fourth Circuit.
July 11, 1986.
Rehearing Denied September 17, 1986.
Writ Denied November 14, 1986.
*1248 Kernan A. Hand, David K. Joyce, New Orleans, for appellee.
*1249 Salvador Anzelmo, City Atty., Philip C. Ciaccio, Jr. and Elmer G. Gibbons, Asst. City Attys., New Orleans, for appellants.
Before GULOTTA, KLEES and BYRNES, JJ.
GULOTTA, Judge.
The City of New Orleans appeals from a judgment in favor of a pedestrian who broke her ankle after falling into a street "pothole". We amend and as amended, affirm.
The January 27, 1983 accident occurred on Royal Street, near the side entrance of the downtown Leonard Krower store in New Orleans. Mildred Clairmont exited from the front right passenger side of a car driven by Warren Perrier, which had stopped on Royal Street. Mrs. Clairmont went to the car's right rear door, opened it, took out a package, turned around and slipped on loose gravel and something that she described as a "hump". She suffered a fracture of the left ankle for which she subsequently underwent surgery.
Plaintiff's suit was initially directed against the City of New Orleans and Leonard Krower & Sons, Inc. However, Leonard Krower was dismissed on a motion for summary judgment. No appeal has been taken from that judgment. After a trial on the merits, judgment was rendered in favor of plaintiff and against the City in the sum of $136,012.30, ($90,000.00 in general damages and $46,012.30 in special damages.) The City appeals.

IMPROPER SERVICE OF AMENDED PETITION
The City first contends that plaintiff's service by mail of the amended petition on its counsel of record was improper. According to defendant, because LSA-C.C.P. Art. 1151 requires that a defendant plead in response to an amended pleading, the amended petition should have been served by the Sheriff either on defendant or on defendant's counsel of record as provided under LSA-C.C.P. Art. 1314. Furthermore, defendant claims because no proper service was made and no answer to the amended petition had been filed, issue had not been joined and the matter was not ready for placement on the trial docket under Civil District Court Rules.
LSA-C.C.P. Art. 925 provides that insufficiency of service may be waived. In the instant case, no objection was made of improper service at the trial level and is raised for the first time on appeal. Under these circumstances the objection was clearly waived. However, assuming that the objections were not waived, we fail to find how the City's rights were adversely affected or were prejudiced by the failure of proper service. Accordingly, we reject these contentions.

DEPOSITION EVIDENCE
Defendant next contends that the deposition of an absent plaintiff witness, Joseph Lavalley, should not have been introduced into evidence. In support of this contention, the City argues that the deposition was taken solely for the purpose of discovery and not meant for the purpose of perpetuation to be used in lieu of the witness's testimony at trial. According to defendant, although Lavalley was subpoenaed for the earlier March 27, 1985 trial date, he was not subpoenaed for the rescheduled May 9, 1985 trial date. Defendant further argues that because the prerequisite for introduction of Lavalley's deposition had not been established as set forth in LSA-C.C.P. Art. 1450(3),[1] the absent witness' *1250 deposition was not admissible. We agree.
The following dialogue ensued concerning the introduction of Lavally's deposition:
Mr. Hand: I would like to offer the deposition of Joseph Lavally which was taken on Wednesday, March 27, 1985 for perpetuation.
Mr. Burke: I object to that deposition being entered. He is not here. I would like to use that to cross examine him.
The Court: It was taken for perpetuation?
Mr. Hand: Yes, it was.
The Court: The deposition was taken the day the case was last set for trial while he was here?
Mr. Burke: That is correct.
The Court: Let the record reflect that the deposition is properly taken for perpetuation by an out-of-town witness. Let it be introduced."
A trial judge has wide discretion in determining whether or not to admit a deposition into evidence. See Schneider v. Proctor & Gamble Manufacturing Co., 411 So.2d 669 (La.App. 4th Cir.1982). However, the party wishing to introduce the deposition into evidence must establish grounds for its admissibility. Kleas v. Mayfield, 404 So.2d 500 (La.App. 3rd Cir. 1981), rehearing denied September 23, 1981.
Considering the sparse dialogue regarding the introduction of the deposition and the failure to establish any of the LSA-C. C.P. Art. 1450(3) requirements, we cannot conclude the deposition was properly admitted. Accordingly, we do not consider the deposition.[2]

SUFFICIENCY OF EVIDENCE
Defendant further contends that absent the deposition of the disinterested witness, Lavally, plaintiff failed to establish the existence of a "pot hole" or that she fell into the hazard. Alternatively, the City claims that, if indeed there was a showing of the existence of a pot hole, it was not a "dangerous condition" or "in the nature of a trap". Finally the City claims victim fault exonerates it from liability.
Although plaintiff testified she had slipped on some loose gravel and something she described as a "hump", her daughter Sheleta Jones testified that on the day following the accident, after she had been shown (by an eyewitness) where her mother had fallen, she saw a pothole about 12 inches wide and 6 inches in depth. The record does not indicate an objection to Jones's testimony, nor was any testimony offered by defendant to refute the existence of the pothole. Confronted with no contradictory testimony we cannot say the trial judge erred when he concluded that there existed a pot hole into which plaintiff fell.

NEGLIGENCE
Plaintiff seeks to assess liability against the City based on negligence, strict liability or absolute liability. In order for liability to attach based on negligence, a showing must be made that the municipality had either active or constructive notice of the defect or hazard.
Because no showing was made that the City, in the instant case, had notice of the existence of the pot hole, no finding of liability based on negligence can be made. See Norris v. City of New Orleans, 433 So.2d 392 (La.App. 4th Cir.1983).

*1251 STRICT LIABILITY OF THE CITY
Regarding strict liability, a municipality is responsible for injuries caused by defective street conditions posing an "unreasonable" risk of harm. LSA-C.C. Art. 2317, Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980). For plaintiff to recover on a "strict liability" theory he must prove:
"... that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect." Jones v. City of Baton Rouge, Etc., supra, p. 739.
The defenses to strict liability are victim fault, third party fault and an irresistible force. See Loescher v. Parr, 324 So.2d 441 (La.1975), rehearing denied January 16, 1976.
It is undisputed that Royal Street, where Mrs. Clairmont fell into the pothole, is under the care and custody of the City. Furthermore, it is also undisputed that plaintiff's injuries were caused when she fell into the Royal Street pothole. Therefore, the only issue remaining for our determination is whether or not the pothole constituted an unreasonable risk of injury to plaintiff. We feel that it did.
The unrefuted testimony is that the defect in the street measured 12 inches in width and 6 inches in depth. This rather significantly sized pothole was located in the middle of a downtown well trafficked street, where it is neither forseeable nor anticipated that a pedestrian would encounter such a depression. A pot hole of this size posed a trap to an unsuspecting person hurriedly exiting from an automobile as in the instant case. If this defect were located on an unpaved, slightly trafficked back street, one might be placed on guard for the existence of an irregularity, defect or pot hole in the street. Not so in our case.
However, the City relying on Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir.1985), writ denied 481 So.2d 631 (La.1986) seeks exoneration from liability because the pothole was not a hidden danger and was easily discoverable by ordinary care. According to the City, a pedestrian "has a duty to see that which should be seen" and is not required to look for hidden dangers. The City argues that if plaintiff had exercised ordinary care she would have seen the pothole. In essence, the City claims victim fault.
In Carr v. City of Covington, supra, plaintiff tripped and fell in a pothole located in a passageway intended for both motorists and pedestrians. According to plaintiff, the pothole was in "plain view" and his accident occurred when his attention was diverted towards people in the vicinity. Considering that Mr. Carr was familiar with the area and had been there daily for three months prior to the accident, the court concluded that had he been exercising ordinary care when crossing the street he could have avoided the accident and found that the pothole did not pose an unreasonable risk of injury to plaintiff.
We factually distinguish Carr. In our case, there was no evidence that plaintiff was aware of the existence of the pothole. Furthermore, although plaintiff did testify that she did not look down at the street when she exited the car but hurriedly opened the rear door and took out the package, we cannot say that this conduct, considering the nature of a busy downtown street, falls below that of a reasonably prudent person under the circumstances. Accordingly, we find no victim fault.

QUANTUM
The trial judge awarded damages totaling $136,012.30 computed as follows: $39,936.00 for four years of lost wages, $3,576.30 for a Charity Hospital bill, $200.00 for a physician's consulation fee, $2,300.00 for future medical bills, and general damages in the sum of $90,000.00. He found a 15% disability of the lower left extremity. The City claims error in the assessment of the $39,936.00 in past and future lost wages and that the $90,000.00 in general damages is excessive.

*1252 Loss of Earnings

Plaintiff was employed as a sitter for a lady "in her eighties" at an hourly rate of $4.00 based on a 48 hour week. According to the trial judge this work schedule amounted to $9,984.00 per year. The loss of earnings award in excess of $39,000.00 was based on the trial judge's observation on the life expectancy of the plaintiff's employer. According to defendant, because the award was based on the employer's life expectancy and not the loss or restriction of plaintiff's capacity for future employment, the award is speculative. We agree.
Courts will allow awards for future loss of earnings or loss of profits when proof has been established that the loss actually occurred. Recovery is based upon proof with a reasonable certainty of the loss. See Nobile v. New Orleans Public Service, Inc., 419 So.2d 35 (La.App. 4th Cir.1982), writs denied 422 So.2d 424 and 422 So.2d 426 (La.1982). Schwartz v. United States Fire Insurance Co., 375 So.2d 718 (La.App. 4th Cir.1979).
In the instant case, medical evidence indicated that despite plaintiff's disability she could return to a minimum wage type job provided she restricted lifting weights to no more than ten or fifteen pounds. Further medical evidence is supportive of a conclusion that a 12 month period would be required as a "healing period" for plaintiff's injuries. Based on this testimony we conclude that plaintiff established a loss of earnings in the sum of $9,984.00. The trial judge award in excess of $39,000.00 is manifestly erroneous.

General Damages
We conclude likewise the $90,000.00 general damage award is excessive. Plaintiff suffered a third degree fracture of the fibula and tibia in two places requiring the use of a plate. Plaintiff sustained a 15% disability of the lower left extremity, or a 7% to 8% disability of the body. As a result plaintiff suffers from arthritis of the ankle. She wore a leg cast for about two months, was in a wheel chair for about three and one half months, on crutches for four months, followed by use of a walker for a month and a half. Mrs. Clairmont further testified that she has curtailed her physical and social activity because of ankle pain and fatigue.
The testimony considered, we conclude that the $90,000.00 general damage award constitutes an abuse of the trial judge's discretion. We reduce the general damage award to the sum of $50,000.00 which we determine to be "highest point which is reasonably within the discretion" of the trial court.[3]
Accordingly, we reduce the amount of the award for loss of earnings from $39,936.00 to $9,984.00 and reduce the general damage award from $90,000.00 to $50,000.00. The total amount of the award to plaintiff is amended from $136,012.30 to $66,060.30. As amended the judgment is affirmed.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] "(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
[2] On May 27, 1986, plaintiff's attorney filed a motion in this court requesting that we order the May 8, 1986 deposition of defendant's attorney, in which he (defendant's attorney) acknowledged that Lavalley's deposition was to be used in lieu of his (Lavalley's) testimony at trial, be filed into the record. We do not address plaintiff's motion as this court cannot consider any evidence not admitted in the trial court or not added to the record on appeal by stipulation of the parties. See Capital Bank & Trust Compay v. Lacey, 393 So.2d 668 (La.1980), rehearing denied February 13, 1981.
[3] See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), rehearing denied January 21, 1977, and Brown v. Lykes Brothers Steamship Company, Inc., 422 So.2d 213 (La.App. 4th Cir. 1982).