WILLIAMS, Judge.
Defendants, City of New Orleans (the City) and the Sewerage and Water Board of New Orleans (S & WB), both appeal a judgment of the trial court which found each 50% liable for damages sustained by plaintiff, Cardelia Smith, when she stepped into a hole on the sidewalk in the 700 block of Common Street in New Orleans. The hole was located just behind and directly adjacent to a drainage catch basin. The S & WB assigns as error 1) the trial court’s assessment of 50% negligence to the S & WB when the trial court expressly recognized that plaintiff failed to prove by a preponderance of the evidence that the S & WB caused the hole in the sidewalk; and 2) the trial court’s failure to hold the City *379 solely responsible for plaintiff’s damages. In its specifications of error, the City alleges that 1) the trial court erred in holding the City liable for 50% of the damages because the record showed that the S & WB caused the defect in the sidewalk; 2) the trial court abused its discretion in awarding plaintiff general damages of $35,000.00 for the scar on her leg and $12,-000.00 for a soft tissue injury to her back.
Our review of the record shows that plaintiff failed to prove by a preponderance of the evidence that her damage was caused by any negligence on the part of the S & WB or by a thing in the custody or control of the S & WB. Rather, the record establishes that plaintiff’s damage was caused solely by a thing in the custody and control of the City. Accordingly, we reverse the judgment of the trial court insofar as it holds the S & WB 50% liable and we hold the City solely liable for plaintiff’s damages. Next, the testimony and evidence shows that the trial court abused its much discretion when it awarded plaintiff general damages which were excessive. Thus, we amend the award to the highest amount within the trial court’s discretion.
The facts of this case are not in dispute. On or about June 6, 1986, plaintiff was standing on the sidewalk on Common Street talking to a friend. When she shifted her weight from one foot to the other, her left leg fell approximately one to one and a half feet into a hole. The hole, which abutted the back side of a drainage catch basin, was bordered by rugged cement on three sides and the metal basin on the other. Plaintiff suffered a scrape just inside of her shin bone, extending virtually from her ankle to her knee. Shortly after the accident, plaintiff drove herself to Hotel Dieu Hospital, where her wound was cleaned and her leg x-rayed. Plaintiff’s leg was not broken, and she did not receive stitches. She was given an antibiotic, and tylenol was recommended for pain. Plaintiff was seen by orthopedist Dr. Earl J. Rozas on June 25, 1986 and again on August 13, 1986. Plaintiff gave Dr. Rozas a history of having fallen into the hole and also complained of back pain. Dr. Rozas x-rayed plaintiff’s leg and examined her back. He prescribed Nelfon, an anti-in-flamatory medication. Plaintiff was also seen by Dr. Randolph Howes, a plastic surgeon, sometime after the accident. Dr. Howes recommended a topical bleaching cream to reduce the scarring on plaintiff’s leg.
Plaintiff filed suit against the City and the S & WB. The S & WB filed a third party demand against the City, and the City filed a third party demand against the 5 & WB as well as Landmark Corporation and Lafittes Boudoir, Inc.[1] Following the bench trial in this matter, judgment was rendered in favor of plaintiff and against the City and the S & WB. The trial court assessed special damages in the amount of $289.00 and general damages in the amount of $47,000.00. The City and the S 6 WB were each held 50% liable for the total judgment. Both defendants appeal.
It appears from the oral reasons given at the conclusion of trial that the trial judge based defendants’ liability on negligence. The court stated:
The court has no problem in concluding ■that Mrs. Smith was not guilty of any comparative negligence.... The record will loudly cry out that there was no comparative negligence on Mrs. Smith’s part as she shifted her weight from one leg to the other and abruptly fell into the hole.
[[Image here]]
Now, who is responsible? The court hereby assesses fifty percent negligence on both of the Defendants, fifty percent on the City of New Orleans, and fifty percent negligence on the Sewerage and Water Board.
However, defendants’ liability in this case may be based either upon negligence or strict liability.
A municipality or public body may be held strictly liable under LSA-C.C. art. *380 2317[2] for damage caused by a thing which was in the care or custody of the defendant and which had a vice or defect, i.e., presented an unreasonable risk of injury to another. LSA-R.S. 9:2800; Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); Montgomery v. City of New Orleans, 537 So.2d 1230 (La.App. 4th Cir.1989); Brown v. Dept. of Transportation & Development, 513 So.2d 379 (La.App. 4th Cir.1987), writ den. 515 So.2d 446 (La.1987); Clairmont v. City of New Orleans, 492 So.2d 1247 (La.App. 4th Cir.1986), writ den. 496 So.2d 1048 (La.1986).
Plaintiff must prove that the defendant had actual or constructive notice of the defect before liability may attach either under negligence, Armstrong v. City of New Orleans, 539 So.2d 1000, 1003 (La.App. 4th Cir.1989); Montgomery v. City of New Orleans, 537 So.2d at 1231; Clairmont v. City of New Orleans, 492 So.2d at 1250, or under strict liability, LSA-R.S. 9:2800.
With these principals in mind, we now turn' to the liability of defendants in this case.

Liability of the City

The City has a duty to maintain its streets and sidewalks in a safe condition for use by the public. Armstrong v. City of New Orleans, 539 So.2d at 1002; Montgomery v. City of New Orleans, 537 So.2d at 1232; Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir.1985), writ den. 481 So.2d 631 (La.1986). In this case, the trial court found that the City was in control and custody of the sidewalk in question. The court also found that the City had actual notice of the defective condition in the sidewalk and failed to correct it. The record supports this finding. Walton Duplantis, testifying for the plaintiff, stated that he made at least two calls to the City over a period of months to report the hole in the sidewalk, but that the City did not correct the defect. Thus, the City is liable in negligence under LSA-C.C. art. 2315 and in strict liability under LSA-C.C. art. 2317.
Indeed, the City does not contest that it had control or custody of the sidewalk or that the trial court erred in finding that the City had actual notice of the hole and that plaintiff sustained damages as a result of this defect. Rather, the City maintains that the acts of a third party, the S & WB, caused or contributed to create the defective condition and that the S & WB was therefore liable for contribution to the City. As discussed below, this contention is without merit.

Liability of the S & WB

While the City contends that the trial court erred in assessing only 50% liability to the S & WB, the S & WB contends that the trial court erred in assessing 50% liability against them after the court found that there was no negligence on the part of the S & WB that caused the hole in the sidewalk and that the catch basin was not defective.
In his reasons for judgment, the trial court stated, in part:
Let me say into the record that the court feels that the Plaintiff has failed to prove by a preponderance of evidence that there was any negligence on the part of the Sewerage and Water Board which caused this cavity or hole in the sidewalk. There is a Sewerage and Water Board catch basin with a steel cover on top of it from right next to this hole and the court can suspect that the Sewerage and Water Board catch basin has' something to do with the hole that is plum right next to it, but the court suspects that but there is not a preponderance of evidence against the Sewerage and Water Board and I want to say that in the record. The court finds the Sewerage and Water Board’s negligence in their very indifferent attitude and blahza [sic] attitude and terrible system within the Sewerage and Water Board about reporting this hole to a fellow agency. The court concludes *381 that the Sewerage and Water Board and the City were notified of this hole, ... Therefore, I owe the negligence on the Sewerage and Water Board in not sending out somebody sooner than after the woman fell in the hole.
[[Image here]]

I feel the Sewerage and Water Board was negligent in not sending someone out there, even though they did not cause it.

[[Image here]]
And for them, I think they did prove there was nothing defective on their part. [Emphasis added.]
The record supports the trial court’s finding that there was no negligence of the S & WB which caused the hole and that the catch basin, in the control and custody of the S & WB, was not defective. However, the trial court erred in holding that the S & WB was nonetheless liable in negligence for its failure to notify the City and for its failure to correct the defective condition of the sidewalk.
The S & WB is statutorily charged with the construction, control, maintenance and operation of the public water, sewerage and drainage systems. LSA-R.S. 33:4071; Armstrong v. City of New Orleans, 539 So.2d at 1003. The alleged defect in the catch basin was a leak in the basin’s rear wall, underground and adjacent to the hole in the sidewalk. The theory is that a leak in the rear wall of the catch basin would have caused wash-out of the soil beneath the sidewalk and thus, the hole. The trial transcript reveals some conflicting testimony concerning the condition of the posterior wall of the catch basin.
Walton Duplantis, who operated Tranchi-na’s Restaurant on the property adjacent to the hole and who witnessed plaintiff’s fall, personally examined the hole just after plaintiff’s accident. According to Duplan-tis, the hole in the sidewalk slanted toward the rear wall of the catch basin. He testified that the rear wall of the basin was deteriorated to the point that he could actually see light coming in from the point in the street where water would drain into the catch basin. Anything which was poured into the hole in the sidewalk would drain directly into the basin.
Roy Jackson, a S & WB employee, ran a dye test on the catch basin to determine whether it needed repair after plaintiff’s fall. Apparently, Jackson poured water containing a dye into the hole in the sidewalk. After waiting at least 15-20 minutes, Jackson observed that some dye had made its way into the main drain line, appearing in the line down the block. However, Jackson testified that the dyed water must have leaked into the main line through some other opening, as there was not one drop of water or dye in the catch basin after running the test. Jackson completed a written report of his test in which he recommended that the rear wall of the catch basin “may need brick work done on it.” However, Jackson explained that he wrote this as a precautionary measure, thinking that if the S & WB would add support to the rear wall then it would fill the sidewalk hole in the process and thereby protect both the catch basin and the public.
John R. Huerkamp, a mechanical engineer employed as a gravity systems superintendent for the S & WB, corroborated Jackson’s testimony. Huerkamp testified that he inspected the catch basin after Jackson wrote the report. Although Huer-kamp acknowledged that a hole in the sidewalk behind a catch basin would generally be due to a leak in the catch basin, he personally observed no cracks or holes in the inside rear wall of the catch basin here. Upon examination of the structure, Huer-kamp determined that it did not need brick work. He concluded that there was no defect in the basin or piping that caused the cement failure and that Jackson’s dye must have entered the system through some other leak.[3]
*382 After considering all of the testimony, we conclude that the record furnishes a reasonable factual basis for the trial court’s finding that the damages were not caused by a defect in the catch basin, and that the trial court was not clearly wrong in holding that the hole in the sidewalk was not caused by the fault of the S & WB. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). While we recognize that the mere proximity of the hole to the catch basin suggests a connection between the two, the evidence in the record is not so compelling that we can say that the trial court erred in finding no defect in the catch basin which caused or contributed to the defect in the sidewalk.
Although the trial court held that the hole was not caused by the fault of the S & WB and that “there was nothing defective on their part,” the trial court nonetheless held that the S & WB was 50% liable. First, the trial court reasoned that the S & WB was remiss in failing to inspect the site of the accident and notify the appropriate agency of the defect. The court so held, despite its finding that the City had actual notice (through Walton Duplan-tis) of the defect and failed to respond prior to plaintiffs accident. Thus, the lack of notice from the S & WB to the City was not a cause of the accident. Because causation is a necessary element of both negligence and strict liability, the trial court was clearly wrong in holding the S & WB liable for its failure to notify the City. Next, the trial court held that the S & WB was negligent for its failure to fix the defective sidewalk. Because the law does not impose upon the S & WB a duty to maintain sidewalks in the control and custody of the City, the trial court was clearly wrong in holding the S & WB liable for its failure to correct the defect in the sidewalk.
Accordingly, we reverse the trial court’s judgment insofar as it holds the S & WB liable for plaintiff’s damages and amend to hold the City liable in full.

Quantum

The City contends that the trial court erred in assessing $35,000.00 to the plaintiff in general damages for the scar on her leg and $12,000.00 in general damages for the strain in her back. We agree.
First, the plaintiff sustained a long scrape to her shin. However, it did not require a single stitch, and the leg was not broken. She received an antibiotic (apparently to reduce the risk of infection), and tylenol was recommended for pain. Plaintiff testified that the leg swelled and was quite sore in the days just after the accident. However, the leg healed without further complications, and plaintiff has full use of the extremity. Plaintiff testified that the leg is tender whenever her 65 pound son hits it or leans against it during rough play, but that the tenderness ceases when her son gets off of the leg.
Plaintiff’s summer vacation began the day of the accident, so she did not miss any work due to the accident. However, the record does not indicate that the injury was significant enough to have caused her to miss work anyway.
A scar remains where the scrape was. Plaintiff testified that the scar was significantly better at the time of trial than it was just after the accident and that it is camouflaged well by stockings. Although she has felt self-conscious about the scar and at first wore only long skirts or pants to hide it, plaintiff testified that she now wears shorter skirts and has even worn a bathing suit. The record does not contain any pictures of plaintiff’s leg at the time of trial.[4] However, the trial court examined plaintiff’s leg and described in detail its appearance. The court stated that the scar is seven and a half inches long, begins about three inches below the knee and extends downward. The court stated that the scar is ugly for the first one and ¼ inches, is not offensive for the next few inches, then is ugly again for the bottom ¾ of an inch. The scar is approximately ¼ inch wide at its ugliest part.
*383 Under the circumstances of this case, we conclude that the trial court clearly abused its much discretion in awarding $35,000.00 to plaintiff for the scar on her leg. Reck v. Stevens, 373 So.2d 498 (La.1979). Plaintiff suffers no disability and no lasting effects of the injury. The scar has improved significantly over time with the application of medicated bleaching cream, and there is no reason to believe that it will not continue to do so. Although plaintiff testified that she is self-conscious about the scar, she is able to wear skirts, shorts, and even swim suits.
Now that we have determined that the trial court abused its discretion in awarding $35,000.00, we resort to prior awards under Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) for the purpose of making a determination of the appropriate award. Reck v. Stevens, 373 So.2d at 501. We conclude that $12,000.00 is the highest award for plaintiff’s scar reasonably within the discretion afforded the trial court. See Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ den. 445 So.2d 449 (La.1984) [$7,500.00 for a permanent scar on plaintiff’s right leg which the trial court described as “quite noticeable,” resulting from cuts received in fire of landlord’s building]; Bourgeois v. Jones, 481 So.2d 145 (La.App. 5th Cir.1985), writ den. 484 So.2d 136 (La.1986) [$17,500.00 for lacerations to the face and other parts of the body suffered when plaintiff was hit by an automobile.]; Lalonde v. Mabry, 489 So.2d 1076 (La.App. 3d Cir.1986) [$7,500.00 to one plaintiff who received 35 — 40 stitches on and around his face after suffering a cut to his nose, a cut below his eye, cuts to his gums, a fracture of his eye bone, and the knocking out of several teeth; and $15,-000.00 to other plaintiff who received 64 stitches on his face after he was attacked with brass knuckles and a broken beer bottle].
Accordingly, we amend the $35,000.00 award granted by the trial court and reduce it to $12,000.00, which is the highest amount reasonably within the discretion of the trial court under the facts and circumstances of this case.
Plaintiff also suffered a muscle strain to her back. During her second visit to Dr. Rozas in the weeks following the accident, plaintiff complained of pain in her back. Dr. Rozas testified that some tenderness in plaintiff’s back was noted. However, an x-ray of the thoracic spine was normal, and Dr. Rozas testified that the injury to plaintiff’s back did not appear severe or chronic at the time of the visit. Plaintiff did not undergo physical therapy for her back. Plaintiff testified that her back still bothered her when she did mopping and other housework. However, she also testified that she has never had to refill the prescription given to her with instructions to take as needed and has not returned to the doctor with further complaints of back pain.
We conclude that, under the circumstances of this case, the award of $12,000 for the soft tissue injury to plaintiff’s back was excessive. Reck v. Stevens, supra. Plaintiff was not hospitalized for the injury and has suffered no effects severe enough for her to continue medication or return to the doctor.
Resorting now to prior awards for a determination of the appropriate award in this case, id., we conclude that $6,000.00 is the highest award reasonably within the trial court’s discretion. See Segui v. Anthony, 487 So.2d 616 (La.App. 4th Cir.1986), writ den. 489 So.2d 252 (La.1986) [$5,500.00 for diagnosed moderate cervical strain and mild lumbosacral sprain, with possible nerve root involvement following automobile accident]; Labee v. Louisiana Coca Cola Bottling Co., Ltd., 500 So.2d 850 (La.App. 1st Cir.1986) [$5,000.00 for neck and possibly back strain, where two years after the automobile accident, plaintiff testified that she was in “constant pain” and suffered “constant headaches” and backaches]; Anderson v. McCarty, 519 So.2d 324 (La.App. 2d Cir.1988) [$2,000.00 for acute lumbosacral strain superimposed on a disc disease, following an accident in which plaintiff’s car struck defendant’s cow]; Turner v. Nationwide Insurance Co., 503 So.2d 734 (La.App. 3d Cir.1987) [appellate court raised general damage award from $729.06 to $5,000.00 *384 for low back strain, where plaintiff experienced pain at least 14 months after the accident].
Accordingly, we amend the $12,000.00 award for injury to plaintiffs back and reduce the award to $6,000.00, the highest award reasonably within the trial court’s discretion under the facts and circumstances of this case.
For the foregoing reasons, the judgment of the trial court is reversed insofar as holds the S & WB liable for any portion of plaintiffs damages and we hold the City responsible for the judgment in full. Further, we amend the award of general damages granted by the trial court to $18,-000.00, and affirm as amended.
REVERSED IN PART, AMENDED, AND AFFIRMED AS AMENDED.

. Prior to trial, Lafittes Boudoir, Inc. was dismissed from the suit. While the record is unclear as to the status of Landmark Corp., this appeal does not concern that party.

. LSA-C.C. art. 2317 reads, in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.

. Huerkamp testified that no drain line is completely water-proof, as it is normal to have leaks at the site of the expansions, for instance. The dyed water here could have drained through the soil and entered at one of these points.

. Pictures taken at trial apparently did not accurately depict the leg and were not admitted into evidence. In an unusual measure, the court admitted plaintiffs entire body into evidence for appellate review if necessary.