GUIDRY, Judge.
Defendants, Wi-Jon d/b/a Bestway of Wisner (Bestway) and Transcontinental Insurance Company (Transcontinental), Best-way’s insurer, both incorrectly named in the petition and judgment as Bestway Grocery and CNA Insurance Companies, appeal a judgment of the trial court in favor *938 of plaintiff awarding $14,000 in general damages for injuries allegedly sustained by young Wendy Hardie when she fell out of a grocery cart as her mother shopped at defendant’s store. We reverse.
On December 1, 1989, three adult members of the same family, Evelyn Hardie, Delores Book, Evelyn’s mother, and Darlene Book, Evelyn’s sister-in-law, stopped to buy groceries at Bestway. They were accompanied by two young children: Kim-ber Book, Darlene’s eight month old daughter, and Wendy, Evelyn’s two year old daughter. One of the ladies selected a grocery cart from one of several rows of carts at the store entrance and they placed Kimber, the younger of the two children, in the seat provided at the rear of the cart, while Wendy was placed in the grocery compartment in the front of the cart.
The grocery compartment of the cart is a rectangular compartment, hinged at the rear so that the cart can be stored with the grocery compartment in a vertical position. The grocery compartment has a hinged front to facilitate removal of merchandise by store cashiers. The front is secured by lifting the “gate” so that metal loops on either end pass over slightly smaller metal loops on the front of the side walls of the cart. The gate can be lowered by disengaging the gate loops at the front of the cart’s sides. (See D-5 and D-6 in Appendix). A child’s seat is provided at the rear of the cart. That seat is separate from the grocery compartment, has no side which opens and has a red, plastic seat bottom which shows how a child should be transported in the cart. On the plastic seat is a clearly legible sign which warns that children should not be transported in the grocery compartment (see D-4 in Appendix).
As aforementioned, two year old Wendy was placed in the grocery compartment of the cart and the younger child in the rear seat. The three ladies all agreed that when the cart was removed from the stack of other carts, it appeared to have the front gate latched. However, no one checked the gate to make sure it was secure. As the party proceeded down one of the store aisles, they stopped momentarily so that Evelyn could select several items. While the cart was stopped, Wendy, who had been seated with her back against one side ,of the grocery compartment, moved toward the front of the cart. It is not known if she leaned against, pushed the front gate, or unlatched the gate, but in any event, the gate dropped open and Wendy fell to the floor striking her forehead. She sustained a lump on her head, a cut lip and later both eyes blackened.
As Evelyn went to her daughter’s aid, Delores Book went to report the accident to a store employee. Delores testified that upon returning to the accident scene, she attempted to close the front of the cart but could only do so by striking the top of the gate with her fist. She stated that she could not remember if she showed this to any store employee. Ms. Book could also not remember who was pushing the cart at the time of the accident. At trial, she testified that she could not remember admonishing Wendy not to move around so much in the cart, while at her deposition she had stated that Wendy had been moving about, had been trying to stand up in what she felt was an attempt to get out of the buggy, and that she had to sternly warn the child to keep still.
Darlene Book testified that she could not remember where she was standing when Wendy fell. She stated that she thought Delores Book showed the cart to a man from the store. She stated that she did not examine the cart herself, but believed that after the accident someone closed the gate by striking it. However, in her deposition, she stated that she couldn’t remember how the gate worked.
We considered the duty of store owners and shop keepers to the general public and the burden of proof placed on a member of the general public who claims a breach of that duty and resultant injury in the case of Tupper v. State Farm Fire & Casualty Company, 553 So.2d 488 (La.App. 3rd Cir.1989), where we stated:
Owners of businesses who permit the public to enter their establishments have a duty to exercise reasonable care to protect those who enter. This duty ex *939 tends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers. Rodriguez v. New Orleans Public Serv., Inc., 400 So.2d 884 (La.1981)....
In Carter v. Bd. of Sup’rs of Louisiana St. Univ., 459 So.2d 1263, 1265 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985), our brethren of the First Circuit stated:
“The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315.
There is a difference in proof between these two theories of liability, however, in that under LSA-C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant.
Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.” (Citations omitted.)
Further, in Miller v. Broussard, 430 So.2d 330 (La.App. 3rd Cir.1983), writ denied, 434 So.2d 1093 (La.1983), we stated that the extent of the duty and the resulting degree of care necessary to fulfill that duty is the same under LSA-C.C. Art. 2317, strict liability, and under LSA-C.C. Art. 2315, ordinary negligence_ See also Bealer v. National Tea Company, 597 So.2d 1242 (La.App. 3rd Cir.1992).
The trial court gave no reasons for its judgment and there is no clear indication in the record of the basis for the trial court’s judgment.
There is no evidence in the record to support a finding that the cart or its front gate locking mechanism was defective. All three ladies who testified agreed that the grocery cart looked “normal” when they selected it from among the other carts at the store entrance. Further, they all agreed that if they had noticed anything wrong with the cart they would have selected another one. Although Darlene Book testified at trial that after the accident the gate locking mechanism looked bent, this testimony is inconsistent with her prior deposition testimony. There is no evidence that anyone connected with the store had any knowledge of any defect in any cart. The store manager testified that the same carts were in use at the grocery store on the day of trial as had been on the day of the accident. He further testified that neither he nor any employee had removed a cart from service because of a defective front gate locking mechanism. Further, he testified that none of his cashiers who manipulated the gates on a daily basis nor any other employee had reported any problem with a gate locking mechanism. Additionally, the spouses of two of the ladies went to the store at different times after the accident and neither could locate a defective cart.
In this case plaintiff failed to establish by a preponderance of the evidence that the grocery cart had a defect which created an unreasonable risk of harm. Although the record establishes that the gate at the front of the grocery cart dropped open while Wendy was standing therein, the evidence fails to establish what caused the gate to open. A number of possibilities exist. The front gate of the grocery cart may not have been properly secured before being placed in use; the latch may have become dislodged when Wendy pushed against it; or, the child may have unlatched *940 the gate while the accompanying adults were inattentive.
However, even assuming arguendo that a defect in the cart’s latching mechanism did exist, in our view, this fact would not give rise to defendant’s liability for plaintiff’s damages.
It is well settled that in products liability actions the plaintiff bears the burden of establishing that the defective thing was in “normal use” at the time injury or damage occurred. “Normal use” for purposes of products liability includes use in accordance with manufacturer’s instructions as well as foreseeable misuse that is contrary to the manufacturer’s instructions. Hale Farms v. American Cyanamid Company et al, 580 So.2d 684 (La.App. 2d Cir.1991), writ denied, 586 So.2d 537 (La.1991), and cases therein cited. There is no valid reason why this same principle should not apply in strict liability cases under La.C.C. art. 2317 against the custodian of an allegedly defective thing.
Plaintiff was provided with a warning, on the seat of the cart, graphically demonstrating the proper and improper way of transporting a child in the grocery cart (See Appendix). When the ladies entered the store, they were accompanied by two children and the carts only provided a single seat. However, all the adults agreed that other carts were available for use and it was their decision to use only one cart. Evelyn Hardie, Wendy’s mother, testified that she placed Wendy in the grocery compartment of the cart. There was testimony that Wendy could walk at that time and was moving about in the grocery compartment. Even if the latching mechanism was faulty, there was no danger that this would precipitate a child’s fall if the basket had been used properly. Additionally, the social utility of a grocery cart is well recognized by anyone who shops in a supermarket, superette or discount department store. The evidence clearly established that had the grocery cart been used as it was designed to be used and in the manner demonstrated by the instructions on the red plastic seat, this accident would not have occurred.
In sum, plaintiff failed to establish that the grocery cart had a vice or defect which caused damage to plaintiff’s child. In any event, plaintiff’s right to recovery is barred because the injury did not occur while the grocery cart was in normal use or while being foreseeably misused.
Accordingly, for the reasons stated, the judgment of the trial court is reversed and plaintiff’s suit is dismissed with prejudice. Plaintiff-appellee is cast with all costs, both at the trial level and on appeal.
REVERSED AND RENDERED.
*941 [[Image here]]
[[Image here]]
*942 [[Image here]]