660 So.2d 882 (1995)
Harold J. MORELL, Plaintiff-Appellee,
v.
CITY OF BREAUX BRIDGE, Defendant-Appellant.
No. 94-1378.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
Rehearing Denied October 16, 1995.
Edmond L. Guidry, III, St. Martinville, for Harold J. Morell.
Chester R. Cedars, Breaux Bridge, for City of Breaux Bridge.
Before DOUCET, Chief Judge, THIBODEAUX, DECUIR and AMY, JJ., and BROUILLETTE[*], J., Pro Tem.
AMY, Judge.
On August 14, 1990, plaintiff, Harold Morell, filed suit against defendant, City of Breaux Bridge (hereafter "Breaux Bridge"), for injuries he sustained on March 7, 1990, *883 after he lost control of a motorcycle while riding along a sidewalk which parallels Alva Drive in Breaux Bridge. After trial on the merits, the trial court awarded plaintiff $1,052,474.65 in damages, but assessed 70 percent of the fault to him and reduced his recovery by this percentage. Defendant appealed and plaintiff answered. We reverse.

FACTS
After work on the evening of March 7, 1990, plaintiff rode a 1980 Kawasaki motorcycle to Jerry Sam's house to have some work done on the motorcycle. He waited at Jerry Sam's home for the person who was going to work on his motorcycle to arrive. When the individual failed to appear after a half-hour wait, plaintiff left. Plaintiff testified that he left Jerry Sam's driveway and drove his motorcycle in the street until it began to have mechanical difficulties. According to plaintiff, after the motorcycle engine stopped running properly, he pulled up onto the sidewalk to see if he could correct the motor's problem. After the motorcycle engine again began to run, plaintiff stated that he continued along the sidewalk rather than returning immediately to the street. He testified that he intended to enter the street at the next driveway. About 150 feet past Jerry Sam's house, there was an unimproved lot with no sidewalk. The lots on each side of this unimproved lot had been developed and sidewalks had been laid. As one entered the unimproved lot on the sidewalk from either of the lots next door, there was a drop-off where the sidewalk ended. The trial court found that plaintiff lost some control of the motorcycle when he entered the unimproved lot at the point where the sidewalk ended. Even though there was no sidewalk across the unimproved lot, plaintiff continued riding the motorcycle across the lot. The trial court found that when plaintiff attempted to get back on the sidewalk again at the other end of the unimproved lot, he lost complete control of the motorcycle and fell. Plaintiff hit his head on the sidewalk and sustained serious injuries, including brain damage, almost a complete loss of vision in his left eye, damage to his right eye, and loss of his sense of smell. Additionally, plaintiff began to experience seizures and headaches after the accident, and an injury to his left hip left him unable to walk without the aid of a cane.
The nature of plaintiff's injuries was not controverted; however, plaintiff's recollection of the events immediately before his accident was contradicted by Clyde Ledet, who was sitting on a porch across the street from Jerry Sam's house. Mr. Ledet testified that after leaving Jerry Sam's house, plaintiff immediately started driving down the sidewalk and did not go into the street. Furthermore, Mr. Ledet did not observe or hear anything indicating that the motorcycle engine ran badly.
The trial court concluded that defendant was strictly liable for plaintiff's injuries and that plaintiff was negligent, assigning "the fault and cause between the parties at 70% for the plaintiff and 30% for the City of Breaux Bridge." The court awarded damages for lost wages in the amount of $239,736.42, medical expenses in the amount of $62,738.23, and general damages in the amount of $750,000.00.
Defendant appealed and plaintiff answered. Defendant argues that the trial court erred in determining that the sidewalk upon which plaintiff was injured created an unreasonable risk of injury and in concluding that the risk of injury to the plaintiff was within the ambit of Breaux Bridge's duty to maintain its sidewalks in a reasonably safe manner. Furthermore, defendant maintains that the trial court's factual findings with respect to the reasons the plaintiff operated his motorcycle on the sidewalk were manifestly erroneous. Plaintiff answered, contending that the trial court erred in assessing him with 70 percent of the fault. Plaintiff argues that at least 60 percent of the fault should be apportioned to defendant.

ANALYSIS
A plaintiff seeking to recover under La.Civ.Code art. 2317 must prove that (1) the thing which caused his damage was in the custody of the defendant; (2) the thing had a condition that created an unreasonable risk of harm; and (3) the defective thing caused plaintiff's injuries. Oster v. Dept. of Transp. & Development, 582 So.2d 1285 (La.1991); *884 Bealer v. National Tea Co., 597 So.2d 1242 (La.App. 3 Cir.1992). If the plaintiff's action is brought against a public entity, La.R.S. 9:2800 additionally requires that the plaintiff prove that the defendant had actual or constructive notice of the purported defect and failed to remedy it within a reasonable amount of time. Bessard v. State, DOTD, 93-507 (La.App. 3 Cir.2/9/94), 640 So.2d 309; affirmed, 94-0589 (La. 11/30/94), 645 So.2d 1134.
In the instant case, neither party asserts that the sidewalk upon which Mr. Morell received his injuries was not in the care, custody, and control of Breaux Bridge; similarly, neither party asserts that Breaux Bridge lacked knowledge of the missing portion of the sidewalk. Our analysis then focuses on whether the missing sidewalk and the drop-off constitute an unreasonable risk of harm under the facts of this case.
In discussing the unreasonable risk of harm inquiry, the Louisiana Supreme Court has stated: "In essence, the unreasonable risk of harm analysis is similar to the duty-risk analysis which is performed in a negligence case.... Just as in a negligence analysis, a court utilizing an article 2317 strict liability analysis must determine whether the codal duty imposed on a custodian of the thing was placed upon him to prevent the type of accident involved in the case before the court." (emphasis added). Oster, 582 So.2d at 1289. We must examine, then, whether this sidewalk posed an unreasonable risk of harm for motorcyclists.
In the unreasonable risk of harm analysis, the utility of the thing is balanced not only against the likelihood and magnitude of the risk; also to be considered is "a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident." Oster, 582 So.2d at 1289.
In the case before us, we first note that the utility of the sidewalk is clear: sidewalks provide a place separate from vehicular traffic where pedestrians may walk. Sidewalks help to protect pedestrians from the dangers presented by motor vehicles and to keep roads clear of the distractions which pedestrians pose to motorists. Since sidewalks function to make travel safer for both pedestrians and motorists, their utility is great.
Once we find that sidewalks possess great utility, we then turn to examine whether the gap and drop-off in the sidewalk constitute an unreasonable risk of harm in this case. Whether a thing presents an unreasonable risk of harm is a matter particular to the circumstances of each case; our analysis in this case must consider the uses for which sidewalks are designed and intended, because "the requirement of reasonable safety implies reasonable safety for any lawful or proper purpose." (emphasis added). U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La.1976); see also Oster, 582 So.2d at 1289; Hardie v. Bestway Grocery, 620 So.2d 937 (La.App. 3 Cir.), writ denied, 626 So.2d 1164 (La.1993).
A sidewalk is designed and intended to permit pedestrians to walk free from the perils posed by motorized traffic. The risk of harm to one using this particular sidewalk in the manner for which it was intended and designed is not great. The likelihood of a pedestrian suffering serious injury from the missing section of sidewalk and the drop-off is small because they could be seen and avoided by one traveling at a walking or running speed; similarly, the magnitude of harm one would expect a pedestrian to suffer would be relatively small compared to that suffered by Mr. Morell.
A sidewalk is not intended or designed to serve as a path for motorcycles, especially motorcycles traveling at a high rate of speed. A motorcycle using the sidewalk in the manner Mr. Morell did presents a great danger both to the pedestrians for whom the sidewalk was designed and to the vehicle operator. Had Mr. Morell been a pedestrian, he could not have traveled as fast as he did, and the drop-off would neither have caused him to lose control nor have produced so grievous an injury. His use was clearly not one for which the sidewalk was intended, and it had virtually no social utility.
While the cost to Breaux Bridge of installing this bit of sidewalk would not have been great, we believe that extending Breaux *885 Bridge's duty to Mr. Morell would require it to make sidewalks safe for motorcyclists. The cost of making its sidewalks safe for motorcycle traffic would be overwhelming and would force Breaux Bridge to alter sidewalk design so much as to make them unfit for their intended use, that of providing a pedestrian walkway. To find that the sidewalk in question presented an unreasonable risk of harm under the facts of this case would be to impose a duty on Breaux Bridge beyond that of making sidewalks reasonably safe for their intended users; we decline to make such an extension.
Circumstances may exist in which the extension to non-pedestrians of a municipality's duty to maintain safe sidewalks for pedestrians is warranted, specifically when the use by the non-pedestrian is usual and foreseeable. In the case before us, plaintiff put on no evidence at trial that the street was defective or unavailable for him to ride his motorcycle. Moreover, two witnesses at trial testified that Alva Drive was a residential street with no commercial establishments and little traffic, and that Lillian Heights had only one access road into the subdivision. Especially under such circumstances, we cannot find that use of a sidewalk by a motorcycle is usual or foreseeable.
Accordingly, we find that the sidewalk in question did not present an unreasonable risk of harm to plaintiff. Because of this finding, we need not reach the other assignments of error.

DECREE
For the reasons above, the judgment of the trial court is reversed. It is now ordered, adjudged, and decreed that there be judgment in favor of defendant, the City of Breaux Bridge, and against plaintiff, rejecting plaintiff's demands and dismissing his suit. All costs of this appeal are assessed to plaintiff, Harold J. Morell.
REVERSED AND RENDERED.
DOUCET, C.J., concurs and assigns written reasons.
THIBODEAUX, J., dissents and assigns written reasons.
DECUIR, J., dissents.
BROUILLETTE, J., Pro Tem., concurs and assigns written reasons.
DOUCET, Chief Judge, concurring.
I concur with the majority opinion. I agree with the decision to reverse the trial court and to render judgment rejecting the plaintiff's demand's against the City of Breaux Bridge and dismissing his suit. However, the question to be considered is not whether the sidewalk posed an unreasonable risk of harm to motorcycles but whether the City of Breaux Bridge owes a duty to keep its sidewalks safe for imprudent motorcyclists.
In Oster v. Department of Transp. and Development, State of La., 582 So.2d 1285, 1289 (La.1991), the Louisiana Supreme Court stated that:
"In essence, the unreasonable risk of harm analysis is similar to the duty-risk analysis which is performed in a negligence case. The obligation placed by article 2317 upon a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. See Socorro v. City of New Orleans, 579 So.2d 931 (La.1991) (because an owner cannot be held responsible for all injuries resulting from any risk, the court's duty is to decide which risks are unreasonable). Just as in a negligence analysis, a court utilizing an article 2317 strict liability analysis must determine whether the codal duty imposed upon a custodian of the thing was placed upon him to prevent the type of accident involved in the case before the court. Landry v. State of Louisiana and the Board of Levee Commissioners of the Orleans Levee District [495 So.2d 1284 (La.1986)], supra; Entrevia v. Hood [427 So.2d 1146 (La.1983)], supra, (Lemmon, J., concurring)." (Emphasis added)
The duty placed on the City of Breaux Bridge with regard to sidewalks is not that of keeping the sidewalks safe for use by motorcycles in non-emergency situations. The duty of the City of Breaux Bridge with regard to its sidewalks is a duty to keep the sidewalks safe for use by the public. Smith *886 v. City of New Orleans, 557 So.2d 377 (La. App. 4 Cir.1990). This duty is not unlimited.
"A municipality is not liable for every defect or irregularity in a street or sidewalk that causes injury, but only for the dangerous defect that creates an unreasonable risk of injury. McDade v. Town of Oak Grove, 545 So.2d 1276 (La.App. 2d Cir.1989). In Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4th Cir.1989), the court discussed the proper method for determining what constitutes an unreasonable risk of harm:
The determination of what constitutes an unreasonable risk of harm involves a balancing of interests. Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 140 (1971). The fact that a pedestrian fell does not elevate the condition of the street to that of an unreasonably dangerous defect. Shipp v. City of Alexandria, 395 So.2d 727, 729 (La. 1981). Not every imperfection is a defect. To be a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Montgomery v. City of New Orleans, 537 So.2d 1230 (La.App. 4th Cir.1989). A pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir. 1985), writ denied, 481 So.2d 631 (La. 1986)." (Emphasis added.)
Clark v. Hartford Acc. and Indem. Co., 562 So.2d 50, 50-51 (La.App. 3 Cir.1990)
The law of this state has not extended the duty with regard to sidewalks to one to keep them safe for vehicular traffic. I believe, in fact, that such use is so widely recognized as being unsafe, that the use of sidewalks by vehicles, from bicycles upwards, is prohibited by many communities. I can imagine few, if any, situations in which it could be considered safe, much less prudent, to operate a motorcycle on a sidewalk.
As has been stated, any duty with regard to sidewalks is extended only to those using ordinary and reasonable care. Id.; Mansour v. State Farm Mut. Auto. Ins. Co., 510 So.2d 1305 (La.App. 3rd Cir.1987); Desoto v. Cameron Parish Police Jury, 574 So.2d 547 (La. App. 3 Cir.), writ denied, 577 So.2d 33 (La. 1991). The evidence of record here does not support a finding that Morell was using ordinary and reasonable care. The mere fact that Morell chose to drive on the sidewalk when this was not necessary shows a lack of ordinary and reasonable care. Morell chose to leave the traveled portion of the roadway. Even if the situation which caused him to so choose was an emergency, he continued to drive on the sidewalk long after that situation ceased to exist. He did not stray from the roadway inadvertently, and he certainly did not remain off the road inadvertently. The evidence indicates that he remained off the roadway for over 250 feet before the accident occurred. There were several places where he could have reentered the road safely. Additionally, there is testimony of record which indicates that Morell tested positive for marijuana use when taken to the hospital. This is not the conduct of a person exercising ordinary care and prudence. As a result, the record does not support a finding that the City of Breaux Bridge owed any duty to Morell or that any duty was breached. Accordingly, the City of Breaux Bridge is not liable to Morell.
HAROLD J. BROUILLETTE,[*] Judge, Pro Tem., concurring.
I agree with the analysis and conclusions in the principal opinion. These observations are offered only to expand slightly on the issue of manifest error as it relates to the conduct of the plaintiff.
The supreme court cases of U.S.F. & G. v. State, Dept. Of Highways, 339 So.2d 780 (La.1976) and Oster v. Dept. Of Transportation & Development, 582 So.2d 1285 (La. 1991), both cited in the principal opinion, involved the question of whether certain conditions on highways created unreasonable risks of harm. Although the results of these cases were different, each addressed *887 the manner in which the highway was being used, i.e., the conduct of the plaintiff. In U.S.F. & G., the court recognized the highway department's duty to construct and maintain highways in a condition "reasonably safe for persons exercising ordinary care and reasonable prudence." 339 So.2d at 785 (emphasis added). In Oster, in discussing the area off the shoulder of the highway, the court held that the department owed a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others "who are using the area in a reasonably prudent manner." Oster, 582 So.2d at 1285 (emphasis added).
In the present case, in support of his ruling that 70% fault was attributable to the plaintiff, the trial judge found that the plaintiff should have been able to see the difference between the sidewalk and the grass; that he was negligent in operating the motorcycle on the sidewalk instead of the street; and that he was traveling at an excessive rate of speed. By this court accepting those findings of fact, manifest error loses its importance as to the conduct of the plaintiff. In my view, those findings effectively foreclose a further finding that the plaintiff exercised reasonable care and prudence as required by the holdings in U.S.F. & G. and Oster.
THIBODEAUX, Judge, dissenting.
The majority seems to premise its exoneration of the City of Breaux Bridge on the question of whether a legal duty exists to protect against this particular accident. The portion of the sidewalk where the accident occurred was admittedly defective. Mr. Morell was using this sidewalk only because his motorcycle was experiencing operational problems.
A municipality is certainly under a duty to maintain its property, including its sidewalks, in a reasonably good condition and to use reasonable care in protecting citizens against harm while using that property.
In my view, a motorcyclist could foreseeably be placed in danger by this admittedly defective sidewalk. Although a sidewalk, as the majority observes, is designed primarily for pedestrian traffic, "the requirement of reasonable safety implies reasonable safety for any lawful or proper purpose." U.S.F. & G. Company v. State, Department of Highways, 339 So.2d 780, 785 (La.1976). Mr. Morell did the proper thing. When his motorcycle malfunctioned, he pursued a course of conduct, i.e., moving to the sidewalk, designed to alienate himself from vehicular traffic. The City of Breaux Bridge owed a duty to protect him from the risk of injury which occurred under the circumstances of this case. The general duty owed, that of providing reasonable care and maintaining its property, extended to protect Mr. Morell against the risk he encountered.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Judge Harold J. Brouillette, District Judge, Twelfth Judicial District, participated in this decision as Judge Pro Tempore by appointment of the Louisiana Supreme Court.
[*] Honorable Harold J. Brouillette participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.