801 So.2d 582 (2001)
Agnes B. AMEST and Joseph Amest
v.
CITY OF BREAUX BRIDGE, Louisiana.
No. 01-1034.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*584 E. Byrne Edwards, Edwards Law Firm, Lafayette, LA, Counsel for Plaintiffs/Appellants: Agnes and Joseph Amest.
Chester R. Cedars, Attorney at Law, St. Martinville, LA, Counsel for Defendant/Appellee: City of Breaux Bridge.
Court composed of NED E. DOUCET, JR., Chief Judge, JIMMIE C. PETERS, and MARC. T. AMY, Judges.
DOUCET, Chief Judge.
Plaintiffs, Agnes and Joseph Amest, appeal a judgment of the trial court finding that they failed to prove their case against the Defendant, the City of Breaux Bridge (the City), and dismissing their suit with prejudice at their costs. We affirm the judgment of the trial court.

FACTS
On the morning of February 19, 1999, Plaintiff, Agnes Amest, slipped and fell as she walked across the floor of the Breaux Bridge City Hall. The fall resulted in a transverse patella fracture of the left knee which required surgical repair. The Amests filed suit alleging that the waxed surface of the floor in the City Hall constituted an unreasonably dangerous condition. Mrs. Amest sought reimbursement for past and future medical expenses, plus general damages. Mr. Amest sought damages for loss of consortium.

LAW AND DISCUSSION
The law applicable to the case sub judice was set out by this court in LeJeune v. Riviana Foods, 97-1091, pp. 2-3 (La.App. 3 Cir. 2/18/98); 707 So.2d 1038, 1039-40, writ denied, 98-749 (La.5/1/98); 718 So.2d 418:
When an individual is injured as a result of an unreasonably dangerous condition existing on a landowner's property, he can recover damages relying on either La.Civ.Code art. 2315, which is the basis of general negligence liability, or La.Civ.Code art. 2317, which provides for a strict liability theory of recovery. Owners and occupiers of land have a duty to discover any unreasonably dangerous conditions existing on their premises and to either correct those conditions or warn victims of their existence. Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App. 3 Cir.1987).
The difference in proof between a negligence claim based on La.Civ.Code art. 2315 and a strict liability claim resting on La.Civ.Code art. 2317 is that Article 2315 requires that plaintiff show the owner, or person in custody of the premises, either knew or should have known of the risk, whereas Article 2317 relieves plaintiff from having to prove defendant's scienter. Finley v. State Farm Insurance Co., 598 So.2d 537 (La. App. 1 Cir.1992). However, under either liability theory, plaintiff first has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and, (3) the defect in the property was a cause-in-fact of the resulting injury. Morell v. City of Breaux Bridge, 94-1378 (La.App. 3 Cir. 5/31/95), 660 So.2d 882[, writ denied, 95-2608 (La.1/12/96); 666 So.2d 321].
Property owners are not insurers of the safety of visitors, but only owe a duty to keep their premises in a safe condition for use in a manner consistent with the purposes for which the premises are intended. David v. Reon, 520 So.2d 820 (La.App. 3 Cir.1987), writ denied, 522 So.2d 564 (La.1988). Furthermore, not every minor imperfection or irregularity will give rise to strict liability. *585 The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3 Cir.), writ denied, 479 So.2d 922 (La. 1985). In other words, the owner of the premises cannot be held responsible for any risk posed by his property, only those presenting an unreasonable risk of harm to others. David, 520 So.2d 820. In determining whether a given condition is unreasonably dangerous, the degree to which the danger may be observed by a potential victim who may then provide self-protection is a major factor. Silliker, 520 So.2d 880.
In addition, Morell, 660 So.2d at 884, explains that:
If the plaintiff's action is brought against a public entity, La.R.S. 9:2800 additionally requires that the plaintiff prove that the defendant had actual or constructive notice of the purported defect and failed to remedy it within a reasonable amount of time. Bessard v. State, DOTD, 93-507 (La.App. 3 Cir.2/9/94), 640 So.2d 309; affirmed, 94-0589 (La.11/30/94), 645 So.2d 1134.
The linchpin of Plaintiffs' case is the fact that the janitress of the City Hall, Ms. Monita Aubrey, sprays a light coat of Johnson's Shine Up®, once a day, on her dust-mop before she passes the mop over the floor in the City Hall. The label on the Shine Up can warns against using the product on floors as "they become slippery." Ms. Aubrey had been following the same routine for three years before Plaintiff's fall and continued to follow the same routine for 18 months after her fall. Ms. Aubrey demonstrated the procedure she used to the court.
Mrs. Amest testified that she had accompanied her daughter and grand-daughter to City Hall to see a city court judge on business. The judge was not in his office, so Mrs. Amest remained behind to schedule an appointment while her daughter and grand-daughter returned to their car. Plaintiff stated: "When I was walking out, and then I just started sliding, it wasI just slipped. .... I land down on my, both knee and, but all the weight was on my left knee."
No other witness testified that the City Hall floor was slippery. No expert testimony was introduced. No one who investigated the accident, the City Clerk, a Breaux Bridge police officer, and the Mayor, found any foreign substance on the floor. Nor did any of them find the floor to be slippery. Ms. Pattie Dupuis, the City Clerk, who has worked in the City Hall since it was built, testified that no one else has fallen and that no one has ever complained that the floor was slippery. The Mayor, Jack Delhomme, testified in a like manner. In fact, after Ms. Amest was removed to the hospital, he tried to make himself slide on the floor, at the location of Plaintiff's fall, and was unable to do so. The Mayor's "experiment" was witnessed by Ms. Dupuis.
In ruling for the Defendant, the trial court stated:
I didn't see any testimony which would indicate that applying Shine Up to the floor made it unreasonably dangerous as far as being slippery. Three sprays on that mop, it covered the entire lobby at City Hall doesn't seem towould make much of a difference, and there's been no evidence that it increased or decreased the cohesion of the floor.
I find that the plaintiff has failed to carry his burden of proof and was unable to prove that there was an unreasonably *586 dangerous condition on the floor.
Even if, in arguendo, one would consider that the use of Shine Up created a dangerous condition on the floor, there was no testimony establishing that the City had actual or constructive knowledge of the purported defect.
Considering the foregoing, we find no error in the judgment of the trial court. The judgment of the district court is affirmed. All costs of this appeal are assessed against Plaintiffs, Agnes and Joseph Amest.
AFFIRMED.